## FOLSOM ET AL. *v.* BUTTOLPH ET AL.

[No. 11,500. Filed March 18, 1924. Rehearing denied July 2, 1924. Transfer denied December 17, 1924.]

1. JURY.—*Actions to quiet title are triable by jury.*—Actions to quiet title are triable by jury, not because they are actions at law, but by virtue of the statute (§418 Burns 1914, §409 R. S. 1881) which provides that all actions except those which were of exclusive equitable jurisdiction prior to the 18th day of June, 1852, shall be triable the same as they were triable at the time of the enactment of the statute, and such actions were then triable by jury. p. 288.

2. APPEAL.—*Amendment of pleading during trial, when harmless error.*—The action of the court in permitting an amendment of the complaint during trial will not be reviewed on appeal where the record fails to show that the defendant was misled, to his injury, or prevented from maintaining his defense, by the amendment. p. 289.

3. APPEAL.—*Changing issues during trial so as to deprive party of trial by jury was harmless error when he had a trial by jury.*—The fact that the court permitted the plaintiff to amend his complaint during trial so as to change the issue and deprive the defendant of his right to a trial by jury is not available error when the defendant had a trial by jury, or, at least, every issue he desired to have tried by a jury was so tried. p. 291.

4. APPEAL.—*Overruling motion for venire de novo because jury did not find all issues proper where appellant acquiesced in trial of the particular issue by the court.*—The defendant in a suit to quiet title which was submitted to a jury for trial

cannot complain óf the overruling of his motion for a *venire de novo* on the ground that the verdict did not cover all the issues, in that it failed to find as to the issue relating to restitution by the plaintiff of money expended by the defendant in supporting their mother, alleged by the plaintiff to have been incompetent at the time of executing a deed to the defendant, where it was the theory of the plaintiff and the court that the matter of restitution was to be determined by the court, and this was acquiesced in by the appellant.    p. 293.

5.  APPEAL.—*Appellant cannot complain of finding in his favor.* —An appellant cannot complain of a finding in his favor, even though it is inconsistent with another finding against him. p. 293.

6.  DEEDS.—*Incompetency of grantor at time of execution sufficient to invalidate without proof of other defenses.*—In an action to quiet title against deeds alleged to have been procured by the undue influence of the grantee, at a time when the grantor was of unsound mind, there being evidence to sustain the jury in finding that she was of unsound mind, it was immaterial that there was no evidence that the deeds were procured by fraud, coercion or undue influence.    p. 294.

7.  TRIAL.—*Motion for directed verdict properly overruled if there was any evidence warranting inference to support the issue.*—In the trial of an action to quiet title against deeds alleged to have been procured by fraud and undue influence, at a time when the grantor was of unsound mind, a motion for a directed verdict on the issues of fraud and undue influence was properly overruled if there was any evidence warranting an inference of fraud or undue influence.    p. 294.

8.  APPEAL.—*To sustain verdict court will consider evidence and inferences therefrom.*—On appeal from a judgment for plaintiff in an action to quiet title against deeds alleged to have been procured by fraud and undue influence of the defendant, the appellate tribunal, in determining whether there was any evidence of fraud or undue influence, will consider, not only the testimony of the witnesses, but all reasonable inferences favorable to the appellee that might have been fairly drawn therefrom.    p. 294.

9.  DEEDS.—*Fraud and undue influence distinguished.*—While it has been said that fraud and undue influence are not synonymous terms, undue influence is, in one sense, a species of fraud, and, while there are sometimes present elements of fraud, undue influence may exist without any positive fraud being shown.    p. 295.

10.  DEEDS.—*"Undue influence" defined.*—"Undue influence" is the exercise of sufficient control over the person, the validity

Folsom *v.* Buttolph—82 Ind. App. 283.

of whose act is brought in question, to destroy his free agency and constrain him to do what he would not have done if such control had not been exercised.    p. 295.

11.   DEEDS.—*Fraud and undue influence question for jury in action to quiet title for fraud and undue influence of grantee.*— In a suit to quiet title against deeds alleged to have been procured by fraud and undue influence of the grantee, a son of the grantor, *held* that court did not err in refusing to withdraw from the jury the issues of fraud and undue influence, there being evidence which would have justified the jury in finding that the son was guilty of fraud and undue influence. p. 302.

12.   APPEAL.—*Request for instructions must be made before argument, and shown by record.*—In order to reverse the action of the trial court in refusing to give instructions, the record must show that the request that they be given was made before the commencement of the argument to the jury, and statements in a written request cannot be looked to to determine when it was made, especially when the record fails to show that it was filed.   p. 306.

13.   TRIAL.—*Sufficiency of signing of requested instruction.*— Signing a memorandum at the close of each of the instructions requested is not a signing of the instructions as contemplated by the fourth clause of §558 Burns 1914, §533 R. S. 1881. p. 307.

14.   APPEAL.—*When instructions refused, presumed that they were not requested in time.*—Where there is no affirmative showing that requested instructions which were refused, were tendered and a request made that they be given before the commencement of the argument, it will be presumed on appeal that they were not tendered in time.   p. 307.

15.   APPEAL.—*Instructions given by court on own motion must be signed by judge, but date unnecessary.*—Since the statute (§558, cl. 6, Burns 1914, §533 R. S. 1881) does not require that the instructions given by the court on its own motion be dated, such instructions, if signed by the judge, but not dated, are in the record on appeal.   p. 307.

16.   DEEDS.—*Undue influence in deeds and wills, difference in rule.*—Proof of undue influence in the execution of a deed is not governed by the same rules as in case of a will, stronger proof being required in an action to set aside a will on that ground than in case of a deed.   p. 308.

From Marion Superior Court (A9,161) ; *Solon J. Carter*, Judge.

Action by Mabel F. Buttolph and others against Edson F. Folsom and another. From a judgment for plaintiff, the defendants appeal. *Affirmed.*

*James W. Noel, Hubert Hickam, Alan W. Boyd* and *Orbison & Zechiel,* for appellants.

*Samuel D. Miller, Frank C. Dailey, William H. Thompson, Albert L. Rabb* and *Perry E. O'Neal,* for appellee.

McMAHAN, J.—Complaint by Mabel F. Buttolph in five paragraphs against appellants, Edson F. Folsom and his wife, Mary C. Folsom, to quiet title to certain real estate. The first paragraph alleged that plaintiff and Edson F. Folsom, hereafter designated as appellant, were the sole and only children and heirs of Mary E. R. Folsom, who died intestate in February, 1920: That on November 7, 1917, Mary E. R. Folsom was the owner in fee of the real estate described; that on said last named day, and for a long time prior thereto, she was of unsound mind, aged, sick and enfeebled in body and mind and in such a condition mentally that she was not able to comprehend the nature of a contract or deed; that said Edson, on said day, through undue influence, procured from his mother a deed for the real estate in question; that Mrs. Folsom when she made such deed was a person of unsound mind and did not understand the meaning and effect of such deed and did not know she was thereby conveying all her title and interest in the real estate to said Edson Folsom who at the time when said deed was executed knew his mother was of unsound mind. A disaffirmance on the part of the plaintiff after the death of the mother, together with a demand that appellant convey to plaintiff a one-half interest in the real estate, and the refusal to make such conveyance is also alleged.

The other paragraphs are in substance the same as

the first. The only difference being that they each describe different real estate and that the deeds conveying the same to appellant were executed November 15, 1917.

The issues being closed by a general denial were submitted to a jury for trial. On the fifth day of the trial, but before the plaintiff had introduced all of her evidence in chief, she filed an application for leave to amend each paragraph of her complaint by inserting therein an allegation to the effect that she was ready and willing and offered, in the event a verdict was rendered in her favor, that the judgment or decree of the court should be so drawn as that restitution should be made to appellants or either of them of any amount which the court might find either of them entitled to on account of any money expended by either of them for the maintenance and support of Mary E. R. Folsom after the making of the deed of conveyance, and that plaintiff had not and could not make an offer of restitution for the reason that she had no knowledge or means of knowing the amount, if any, that appellants had expended for that purpose. Appellants' written objections to this application were overruled and each paragraph of complaint was amended in accordance with the application. Without any further objections, or motion to discharge the jury or to set aside the submission, the trial proceeded and resulted in a general verdict for the plaintiff.

Later the plaintiff moved for a judgment on the verdict. The court made and entered a finding that the plaintiff was ready and willing and offered to pay defendants any amount which the court might find the defendants entitled to receive for the maintenance and support of Mary E. R. Folsom after the date the deeds were made; that Edson Folsom had expended $1,425 for the support of his mother; that plaintiff and ap-

pellant were the sole and only heirs of Mary E. R. Folsom and that plaintiff should repay to him, or to the clerk of the court for his benefit, an amount equal to one-half of said $1,425 which, with interest, aggregated $867.60. Appellants filed a motion for a *venire de novo*, which was overruled, and the court thereupon entered a judgment requiring the plaintiff to pay said sum of $867.60 to the appellant. The record shows the payment of said sum to the clerk for his use, after which a judgment was entered in accordance with the verdict of the jury in favor of the plaintiff quieting her title to a one-half interest in the real estate described in the complaint.

Appellants filed their motion for a new trial, but before the same was ruled upon the plaintiff died and her administrator and heirs were substituted as plaintiffs and are named as appellees on this appeal.

The errors assigned are that the court erred (1) in permitting plaintiff to amend each paragraph of her complaint during trial, (2) in overruling appellants' motion for a directed verdict, (3) in overruling appellants' motion to instruct the jury to return a verdict for appellants on the issues of fraud, coercion and undue influence, (4) in adding to the verdict of the jury, the finding of the court and rendering a judgment on the combined verdict and finding, (5) in overruling the motion for a *venire de novo*, and (6) in overruling the motion for a new trial.

Appellants' first contention is that the court erred in permitting the plaintiff to amend her complaint, after the cause had been submitted to the jury. In support of this contention, appellants say that the cause of action, prior to the amendment, was an action at law and triable by jury, while the amendment changed it to an action in equity triable by the court. Appellants are correct in their contention that proceed-

ings to quiet title are triable by jury as a matter of right. Our statutory action to quiet title combines and enlarges the equity proceedings known as bills of peace and bill *quia timet.* Prior to the enactment of our statute on this subject, there was no such issue, either at law or in equity, as that which litigants arrive at in the present suit to quiet title to real property. The issue is such as the statute creates, and not such as existed under the doctrine of courts of equity. *Trittipo* v. *Morgan* (1884), 99 Ind. 269; *Johnson* v. *Taylor* (1886), 106 Ind. 89. Suits to quiet title to real estate are triable by jury, not because they are actions at law. They are triable by jury by virtue of the provisions of §418 Burns 1914, which provides that: "Issues of law and issues of fact in causes that, prior to the 18th day of June, 1852, were of exclusive equitable jurisdiction, shall be tried by the court; issues of fact in all other causes shall be triable as the same are now triable." *See Puterbaugh* v. *Puterbaugh* (1892), 131 Ind. 288, 15 L. R. A. 341.

Appellants say that, upon an offer of restitution, a court of equity can so mold its decree as to do equity to both parties; that this cannot be done in the 2. statutory proceeding to quiet title and that the amendment changed the proceeding to one of exclusive equitable cognizance triable only by the court. Conceding this to be true, appellants have not pointed out where or how they were harmed by reason of this amendment. They made no objection to proceeding with the trial before the jury. They made no motion to withdraw the case from the jury, or to set aside the submission. They made no request that the trial proceed before the court, without the jury. They made no application for a continuance. With their acquiescence, the trial proceeded before the jury. The plain-

tiff concluded the introduction of her evidence in chief. Appellants then introduced evidence for several days, after which the plaintiff's evidence in rebuttal was heard. Conceding, without deciding, that the court erred in permitting the plaintiff to amend her complaint after submission, the defendants cannot complain in this court, because of the leave to so amend, or because of the amendment, when the record fails to show, as it does in this case, by evidence or proof to the satisfaction of the court, that they have been misled, and in what respect they have been misled, to their actual prejudice, in maintaining their defense upon the merits, by reason of or on account of such amendment. As was said in the *Town of Martinsville* v. *Shirley* (1882), 84 Ind. 546: "In the absence of such a showing, we are bound to conclude, as we now do, that the defendant was not actually prejudiced in any manner or to any extent by the plaintiff's amendments to his complaint, or by the action of the court in giving him leave to make such amendments to his complaint, or to either paragraph thereof." To the same effect see *Whitcomb* v. *Stringer* (1903), 160 Ind. 82; *Levy* v. *Chittenden* (1889), 120 Ind. 37; *Darrell* v. *Hilligoss, etc., Co.* (1883), 90 Ind. 264; *Dewey* v. *State, ex rel.* (1883), 91 Ind. 173; *Grand Rapids, etc., R. Co.* v. *Ellison* (1889), 117 Ind. 234; *Child* v. *Swain* (1879), 69 Ind. 230; *Burr* v. *Mendenhall* (1875), 49 Ind. 496. If appellants had made a timely request to set aside the submission, and for a trial by the court, or had made a motion for a continuance supported by a proper and sufficient affidavit, and exceptions had been reserved to adverse rulings, there might be some merit in their contention. An examination of the record discloses that the only evidence of any facts pertinent to restitution or necessity of restitution was contained in the conditional examination of appellant taken on behalf of the plaintiff and

which was read in evidence. There is no showing that appellants were surprised, misled or prejudiced by the amendment, and the plaintiff alleged a sufficient excuse for not having made or having offered to make restitution before beginning her action.

Appellants also argue that, by the amendment, their absolute right to demand trial by jury was taken away from them. The answer is that they had a trial 3. by jury, or, at least, every issue they desired to have tried by jury was so tried. No reversible error has been shown in the action of the court in permitting the amendment of the complaint.

The next contention is that the court erred in overruling the motion for a *venire de novo*. The jury on June 22, 1921, returned a general verdict for the plaintiff. No further steps were taken until July 11, when plaintiff moved for judgment. The record then shows that the court having heard said motion and "being duly advised in the premises, finds" that plaintiff was ready and willing and offered to pay to defendants any amount the court might find they were entitled to; that appellant had expended for the support of his mother $1,425; that plaintiff should repay to appellant or to the clerk of the court for his use one-half of said amount, with interest, from November 15, 1917, or a total of $867.60. The grounds stated in appellants' motion for a *venire de novo* are that the verdict did not cover all the issues, in that it failed to find as to the issue relating to restitution as presented by the amendments to the complaint; that the cause having been submitted to the jury generally, the court had no right to make a finding, or to add to the verdict the finding of the court, and that the verdict of the jury and finding of the court could form no basis for a decree under the issues.

In order to determine the theory of the amendments to the several paragraphs of complaint and the con-

struction placed upon the same by the parties and the court, it is well to keep in mind the exact language of the amendments and the course of the proceedings in so far as they throw any light upon the question. Each paragraph of complaint was amended by inserting therein the following allegation, to wit: "The plaintiff further avers that she is ready and willing and hereby offers, in the event a verdict is rendered in her favor herein, that the judgment or decree of the court shall be so drawn and entered as that restitution shall be made to the defendants or either of them of any amount to which the Court may find them or either of them entitled on account of any moneys, if any, expended by them or either of them for the maintenance and support of said Mary E. R. Folsom after the 15th day of November, 1917." There was also another allegation to the effect that the plaintiff had not and could not make an offer of restitution to the defendants on account of having no knowledge or means of knowing what, if any, amount had been expended by defendants.

The amendments clearly indicated that the cause was to be tried by the jury and a verdict rendered for plaintiff or defendants on the issues theretofore submitted to the jury, and if the jury should find those issues in favor of the plaintiff, that the court should so mold the judgment or decree that restitution should be made in such amount as the court should find the defendants were entitled to on account of money expended in the maintenance and support of Mrs. Folsom. This theory is so clearly expressed in the amendment that no one could have been mistaken or misled as to its theory. That was the theory adopted by the court, seemingly with the acquiescence and consent of appellants.

No instructions were tendered by either party concerning restitution and none were given by the court on

its own motion. All of the instructions tendered and all given by the court related to the questions as to whether Mrs. Folsom was of unsound mind when the deeds were made, whether appellants had knowledge of such unsoundness of mind, the effect of such knowledge, and whether appellants procured the execution of such deeds by undue influence. The requisite forms were submitted to the jury to enable it to return a verdict correct in form in so far as concerned the issues originally submitted to the jury and covered by the instructions. It was not until after the court had made its finding on the question of restitution, and was preparing to enter judgment, that any suggestion was made that the jury should have, but had not, passed upon the question of restitution. Under such circumstances, appellants are in no position to complain because the jury did not pass upon the question of restitution. There was no error in overruling the motion for a *venire de novo.*

Appellants contend that the jury by its verdict found Mrs. Folsom was of unsound mind when she made the several conveyances, and that appellant Folsom, at that time, knew she was of unsound mind, that under such facts, he was not entitled to restitution, and that the finding of the court that he was entitled to restitution is inconsistent with the verdict. If this be true, appellants are in no position to complain, since the finding of the court was in their favor. But we cannot escape the conclusion that it was the understanding of the parties that the question as to restitution was to be disposed of by the court, and that it was to so form and mold the decree as to require restitution by the plaintiff in such sum as the court might find was proper. This was equivalent to a submission by agree-

ment of certain issues to the jury and of others to the court. The verdict covered all the issues submitted to the jury and was in proper form.

The next contention is that the verdict is not sustained by sufficient evidence. This contention is based upon the theory that there is no evidence that

6. the deeds were procured by fraud, coercion or undue influence and that there is no evidence that Mrs. Folsom was of unsound mind when she made the deeds. But there is sufficient evidence to sustain the jury in finding that Mrs. Folsom was of unsound mind when she made the deeds. This being true, the evidence is sufficient to sustain the verdict in the absence of any evidence of undue influence, fraud or coercion. The evidence being sufficient to sustain the verdict, the court correctly refused to instruct the jury to return a verdict for the defendants.

After the court had refused to instruct the jury to return a verdict for appellants, they filed their separate and several motion asking the court to instruct

7, 8. the jury to return a verdict in their favor upon the issues of fraud, coercion and undue influence. The court overruled this motion. A casual reading of the complaint is sufficient to show that it contains no charge of coercion. Neither is there any evidence of coercion, nor did the court submit that question to the jury by any of the instructions. The only issues referred to in the instructions were those relating to unsoundness of mind and undue influence. While the complaint, in a sense, charges fraud on the part of appellant in corruptly procuring the execution of the deeds, no instructions were tendered by either party or given by the court on question of fraud. If there is any evidence warranting an inference of fraud or of undue influence on the part of appellant, there was no error in overruling this motion. In determining

whether there is any evidence of fraud or of undue influence, this court will consider, not only the positive testimony of the witnesses, but also all reasonable inferences favorable to appellees that might be fairly drawn therefrom by the jury. *Chicago, etc., R. Co.* v. *Lake Co. Saving, etc., Co.* (1916), 186 Ind. 358; *Southern Product Co.* v. *Franklin, etc., Co.* (1914), 183 Ind. 123.

Undue influence has been variously defined, and while it has been said that fraud and undue influence are not synonymous terms, it has also been said that undue influence is, in one sense, a species of fraud, and while there are sometimes, perhaps usually, present elements of fraud, undue influence may exist without any positive fraud being shown. *In re Shell's Estate* (1900), 28 Colo. 167, 63 Pac. 413, 53 L. R. A. 387, 89 Am. St. 181. Undue influence may be defined to be the exercise of sufficient control over the person, the validity of whose act is brought in question, to destroy his free agency and constrain him to do what he would not have done if such control had not been exercised. 8 Words and Phrases, 7166 and authorities cited.

It is not possible to lay down a rule that will distinguish between acts which are within the bounds of legitimate influence and acts which make the influence undue. What would amount to undue influence in one case might not amount to such influence in another case. As was said in *Elkinton* v. *Brick* (1888), 44 N. J. Eq. 154, 15 Atl. 391, 1 L. R. A. 161. "Similar acts may be trifling and of no importance in the case of one person, and overmastering in the case of another. Their effect must depend upon the relations between the parties, and the character, strength, and condition of each (*Rusling* v. *Rusling,* 9 *Stew. Eq.* 603; *Dale* v. *Dale,* 11 *Stew. Eq.* 274; *Waddington* v. *Busby,* 16 *Stew. Eq.* 154), and

must be determined by the application of sound sense to the facts of each given case."

In *Schofield* v. *Walker* (1885), 58 Mich. 96, 24 N. W. 624, an instruction that "influence obtained by modest persuasion and argument addressed to the understanding, or by mere appeal to the affections, cannot be properly termed undue influence in a legal sense; but influence obtained by flattery, importunity, superiority of will, mind or character, or by what art soever that human thought, ingenuity or cunning may employ, which would give dominion over the will of the testator to such an extent as to destroy free agency, or constrain him to do against his will what he is unable to refuse, is such an influence as the law condemns as undue, when exercised by any one immediately over the testamentary act, whether by direction or indirection, or obtained at one time or another," was held a correct statement of the law.

And in *Dingman* v. *Romine* (1897), 141 Mo. 466, 474, 42 S. W. 1087, it is said: "Any influence, however exercised, which destroys free agency and substitutes the will of another for that of the person in whose name the act brought in judgment is done, is undue or wrongful. 2 Pomeroy, Eq., sec. 951; 27 Am. and Eng. Ency. of Law, 452. As bearing on the question of undue influence, the relationship of parties to each other, the mental condition of the person whose act is in question, and the character of the transaction, should be taken into consideration. If the relation of confidence and trust between the parties to the transaction exists; if the mind of the one nominally acting is weak and susceptible, and if the transaction results beneficially to the person charged, and detrimentally to the person in whose name the act was done, a presumption of undue influence is raised, and the burden is placed on the one claiming the benefit of the transaction to

prove that the act was voluntary and no unfairness was used. Indeed, the presence of the relation of confidence and trust alone is generally sufficient to raise a presumption of undue influence; so, also, if the party acting be of weak mind and there is either no consideration, or a very inadequate one; a presumption against its validity arises. 2 Pomeroy's Eq., sec. 947; *Allore* v. *Jewell*, 94 U. S. 506; *Griffith* v. *Godey*, 113 U. S. 89."

*In Douglass's Estate* (1894), 162 Pa. St. 567, 29 Atl. 715, the court said: "A will duly executed by a testator of lawful age, is presumed to be the unbiased, as well as the intelligent, expression of the will of such testator, and on those who aver undue influence rests the burden of proof: *Stokes* v. *Miller*, 10 W. N. 241; *Linton's Appeal*, 104 Pa. 238. But where a will is drawn in favor of one occupying a confidential relation, who either writes it, or procures it to be written, or whose advice is sought and taken, the burden rests on such beneficiary to disprove undue influence. Especially is that so, where the testator, though possessing testamentary capacity, is of weak mind: *Boyd* v. *Boyd*, 66 Pa. 283; *Wilson* v. *Mitchell*, 101 Pa. 495; *Cuthbertson's Ap.*, 97 Pa. 163; *Armor's Estate*, 154 Pa. 517. This is not so, however, where there is no evidence that the beneficiary solicited the benefit, or wrote the will, or procured it to be written, or that his advice was sought and taken; in such a case intimately friendly relations between testator and beneficiary, such as living with him, nursing him and managing his business, do not import undue influence, or shift the burden of proof from those who allege it upon the beneficiary. Undue influence exists when, through weakness, ignorance, dependence, or implicit reliance of one on the good faith of another, the latter obtains an ascendency which prevents the former from exercising an unbiased judgment; and, to affect a will, it must, in a measure

at least, destroy free agency, and must operate on the mind of the testator at the time of making the will; *Herster* v. *Herster*, 122 Pa. 239. Those of feeble mind being the more easily subjected to improper influence, the condition of the mind of the testator is always a proper subject of inquiry in connection with the allegation of undue influence, and in fact the former is usually involved in the trial of a question of the latter; *Wilson's Appeal*, 99 Pa. 550. As undue influence may be exercised secretly, so it may be proved, not directly, but circumstantially; but the evidence of it must be satisfactory, and must show that it operated at the making of the will." See, also, *Worrall's Appeal* (1885), 110 Pa. 349, 1 Atl. 380.

In *Keys* v. *McDowell* (1913), 54 Ind. App. 263, the court said, at page 269: "There are certain legal and domestic relations in which the law raises a presumption of trust and confidence on one side and a corresponding influence on the other. The relation of attorney and client, guardian and ward, principal and agent, pastor and parishioner, husband and wife, parent and child, belong to this class and there may be others. Where such a relation exists between two persons and the one occupying the superior position has dealt with the other in such a way as to obtain a benefit or advantage the presumption of undue influence arises. *Rochester* v. *Levering* (1886), 104 Ind. 562, 4 N. E. 203; *Huffman* v. *Huffman* (1905), 35 Ind. App. 643, 73 N. E. 1096; *McCord* v. *Bright* (1909), 44 Ind. App. 275, 87 N. E. 654. Upon the issue of undue influence, such a presumption, arising in favor of the party having the burden of proof makes a *prima facie* case; and, if no evidence is introduced tending to rebut such presumption, he is entitled to a verdict or finding in his favor upon that issue."

The rule is thus stated in *McCord* v. *Bright* (1909), 44 Ind. App. 275: "Whenever two persons stand in such relationship that, during its continuance, confidence is necessarily reposed by one, and a corresponding influence possessed by the other, and this confidence is abused and influence exerted to obtain an advantage at the expense of another in a less fortunate position, the person availing himself of his position for such purpose will not be permitted to retain an advantage thereby secured.   The principal extends to every case in which a fiduciary relation exists as a fact; confidence being reposed on the one side and accepted on the other. The fiduciary relation, with its corresponding duties, does not need to be a legal one; it may be moral, social, domestic or personal.   *   *   *   And the burden is upon him who sustains the superior position of establishing that he acted in perfect good faith, and took no advantage of his influence or knowledge, and that his contract is fair, adequate and equitable."

In *Westphal* v. *Heckman* (1916), 185 Ind. 88, the court held that it was the province of the trial court to draw the proper inferences from the facts proved and thus find the ultimate fact; that as between parent and child, the law raised a presumption of trust and confidence, on the one side and a corresponding influence on the other, and that where the one occupying the superior position in such relation deals with the other so as to obtain a substantial advantage, the law will presume that influence was exerted and that the transaction is fraudulent.   The court, in discussing this question, said: "This so-called presumption, when indulged, arises out of relations which exist between the contracting parties regardless of any facts or circumstances having a tendency to show that a confidence was reposed by one of the parties and an influence gained by the other.   Proof of the existence of such a

relation between the parties establishes *prima facie* that the dominant party to such relation occupies a position of trust and confidence which he must not abuse. This rule, however, is applied only as against the one who is assumed to be the dominant party in the relation shown. In this relation of parent and child, the parent is assumed to be the dominant party, and, where one seeks to show that the child is the dominant party, he must do so by showing that the condition and situation of the parties, their treatment of each other, and other circumstances from which such ultimate fact may be inferred, and unless such fact is found by the court or jury trying the issue he cannot prevail. This court has held that no presumption of fraud or undue influence arises in a case of a conveyance from a parent to a child on account of the mere existence of such relation. In the case of *Teegarden* v. *Lewis* (1895), 145 Ind. 98, 40 N. E. 1047, 44 N. E. 9, it was said, 'Cases of this kind plainly turn upon the exercise of actual undue influence, and not upon any presumption of invalidity.'"

The Westphal-Heckman case was disposed of on a special finding of facts, which found that the conveyance was made to the son without any consideration, and where there was no finding of fraud or undue influence. Under such facts, it was correctly held there was no presumption of the invalidity of the deed.

In *Barkley* v. *Barkley* (1914), 182 Ind. 322, L. R. A. 1915B 678, the court said: "But knowledge by one of the contracting parties of the mental incapacity of the other and lack of any consideration paid work a material modification of the rule. It is settled that where the mental incompetency of the one who has made the conveyance or other contract is known to the other at the time it was made, no allegation of a tender or offer to restore the consideration is a necessary aver-

ment of the complaint. *Thrash* v. *Starbuck* (1896), 145 Ind. 637, 44 N. E. 543; *Studabaker* v. *Faylor* (1908), 170 Ind. 498, 83 N. E. 747, 127 Am. St. 397; 1 Elliott, Contracts §386. Such knowledge destroys good faith and when coupled with want of or gross inadequacy of consideration establishes fraud."

In *Hancock* v. *Hancock* (1916), 63 Ind. App. 173, it was held that where an administrator, an heir to the estate, voluntarily assumed the management of the business affairs of, and established his residence with, decedent's widow, who was uneducated, aged and without business experience, he sustained towards her a fiduciary relation which cast upon him the burden of showing good faith and fair dealing in the management of the trust property in his care, particularly where the result of his action enures to his own benefit and to the injury of the party whose interest he should protect, and, unless good faith is shown, any contract entered into by such administrator with decedent's widow concerning her trust property would be unenforcible as constructively fraudulent.

In *Teegarden* v. *Ristine* (1914), 57 Ind. App. 158, the court held that: "Where the relation of attorney and client, principal and agent, or other confidential relation is shown to exist and it is claimed that the party occupying the superior position has dealt with the one to whom he owes a duty arising out of such relation, and has gained a substantial advantage thereby, the burden is upon the one who holds such superior position of establishing that he acted in perfect good faith, gave the other party full and accurate information possessed by him, took no advantage of his knowledge or influence over the other party, and that the contract or transaction was fair, equitable, voluntary and well understood."

If this were a case where the uncontradicted evidence

clearly made out a case showing no confidential and fiduciary relationship between Mrs. Folsom and appellant, and clearly showed that she was the dominant party, it would have been the duty of the court to have instructed the jury as requested. But, as we view the evidence, it was sufficient to have warranted the jury in finding that the son was acting in a fiduciary capacity, and that he was the dominant party. We hold that, under the evidence, the jury might have found that the son occupied such a position towards his mother as under the law would have justified them in finding him guilty of fraud and of undue influence. There was no error in overruling appellants' motion for an instruction withdrawing the issues of fraud and undue influence from the jury.

Appellants contend that the court erred in refusing to give certain instructions tendered by them. Appellees insist that no question is presented in relation to the refusal to give either of these instructions. The record shows the cause was submitted to the jury June 6; that the trial was resumed from day to day thereafter until June 22, on which day, the record shows that the court instructed the jury in writing and gave to the jury on its own motion instructions Nos. 1 to 5, to each of which defendants separately and severally excepted; that the court gave certain instructions requested by plaintiff, to the giving of each, the defendants separately and severally excepted, and that the court gave certain instructions requested by the defendants and refused to give instructions Nos. 7, 11, 11½, 12, and 14 requested by the defendants, to which refusal to give each of them, defendants separately and severally excepted.

Following this entry appears the instructions given by the court on its own motion. At the close of each of them, appears this statement: "Given and excepted to

by defendants, separately this June 22, Solon J. Carter Judge." The signature of the judge again follows the last instruction of the series, and following this signature is the following endorsement, "June 22, 1921. The defendants and each of them separately and severally at the time excepted and now except to the giving of instructions numbered 1, 2, 3, 4, and 5 given by the Court on its own motion and separately except to each of said instructions." This is signed by the attorneys for the defendants and dated. Next follows what purports to be the instructions tendered by the plaintiff numbered from 1 to 13. Following each of which is the statement, "Given and excepted to by the defendants separately this June 22, 1921, Solon J. Carter, Judge." These instructions are signed by the attorneys for the plaintiff, and, following their signatures, is a memorandum signed by the attorneys for the defendants and dated stating that the defendants excepted to the giving of each of said instructions.

Next follows what purports to be a written request by the defendants that the court charge the jury in writing and a tender of defendants' instructions 1 to 14, with a request that each of them be given and that the court indicate those given by writing "given" or "given as modified by the court," or "refused." This request and tender is signed by the attorneys for the defendants, but there is no record showing that it was filed. While this request states it was made before the beginning of the argument, there is nothing in the record to show such fact. So far as the record shows, the request and tender were not made until after the commencement of the argument. Following this are instructions Nos. 1 to 14, but they are not signed by the attorneys for the defendants, or by any other person. There is nothing on them to identify them as instructions tendered by the defendants with a request

that they be given.  On the margin of certain ones is the word "given" and on the margin of others is the word "refused."  Following the instructions marked "refused," are the words, "Refused and excepted by the defendants separately this June 22, 1921, Solon J. Carter, Judge."

Following the last of these instructions, is a statement dated June 22, 1921, signed by the attorneys for the defendants, to the effect that the defendants separately and severally excepted to the refusal of the court to give each of certain numbered instructions requested by the defendants.

Clause 4, §376 of the Civil Code, §558 Burns 1914, provides that when either party desires special instructions to be given to the jury, such instructions, shall be reduced to writing, *numbered and signed by the party, or his attorney.*  Clause 6 of the same section provides that when either party asks special instructions, the court shall either give each instruction as requested, or refuse to do so, or give such instructions with a modification, in such manner that it shall distinctly appear what instructions were given in whole or in part and those that were refused, so that either party may reserve the proper exception, and that *all instructions given by the court must be signed by the judge,* and filed, together with those asked for by the parties, as a part of the record.

Section 377 of the Code, §559 Burns 1914, provides that any party may, before the commencement of the argument to the jury, tender to the court instructions in writing properly numbered and require the court to indicate before the argument such as will be given, by writing opposite each the words "given," "given as modified by the court," or "refused."  Section 560 Burns 1914, relates to the method of reserving exceptions to the giving or refusing to give the instructions

referred to in the former sections of the Code, and provides, that the party excepting shall not be required to file a formal bill of exceptions, but it shall be sufficient to write on the margin or at the close of each instruction, "refused, and excepted to," or "given, and excepted to," *which memorandum shall be signed by the judge and dated.*

Section 561 Burns 1914, the same being §1 of an act which went into force in 1903, as amended in 1907, Acts 1907 p. 652, provides that *all instructions requested shall be written and numbered consecutively and signed by the party or his counsel.* This section also provides that the court, before instructing the jury, (not before the beginning of the argument as required by §559, *supra*), shall indicate by a memorandum in writing, at the close of the instructions so requested, the numbers of those given and those refused, and that such memorandum shall be signed by the judge. It also provides that all instructions given by the court on *its own motion* shall be in writing when requested before the commencement of the argument and that when such instructions are in writing they shall be *numbered consecutively and signed by the judge;* that if the court modifies any requested instruction, the instruction as modified shall be written out at full length and given by the court as of its own motion and the instruction requested shall be refused; that all instructions requested, whether given or refused, and all given by the court on its own motion, shall be filed with the clerk at the close of the instructions to the jury. A party desiring to take exceptions under this statute may do so at any time during the term. Such exceptions may be taken orally and entered upon the record or minutes of the court, or they be taken in writing. If taken in writing, the party excepting or his counsel shall enter

at the close of the instructions a memorandum, which shall be dated and signed, setting forth, in substance, that such party excepts to the giving or refusing, as the case may be, of each of the instructions, designated by its number.

Appellants undertook to and did reserve exceptions to the giving and refusing to give instructions, (1) by memoranda signed by the judge as provided in §560, *supra*, (2) by taking exceptions orally and entering the same upon the record of the court, as provided in §561, *supra*, (3) by a memorandum at the close of the instructions, signed and dated as provided by §561, *supra*.

An examination of the record discloses (1) that the instructions given by the court on its motion are signed by the judge, (2) that the instructions requested by and given at the request of the plaintiff, were signed by the attorneys for the plaintiff, (3) that the purported instructions requested by the defendants are not signed by the defendants, or their attorneys, although the written request copied in the transcript is signed by appellants' attorneys.

If the record had shown the filing of this request before the beginning of the argument to the jury, it would probably have been a sufficient signing of the instructions and a substantial compliance with the statute. *Indiana Union Traction Co.* v. *Sullivan* (1913), 53 Ind. App. 239, 244, 101 N. E. 401; *Duckwall* v. *Davis* (1924), 194 Ind. 670, 142 N. E. 113. But in order to reverse the action of the trial court in refusing to give instructions, the record must show that the request was made before the commencement of the argument to the jury. We cannot look to statements in the request to determine when it was made, especially when the record fails to show that it was filed.

If it be argued that the signing by the attorneys for the defendants of the memorandum after each of

the instructions, the giving or refusal to give 13, 14. which is claimed to be error, is a sufficient signing, the answer is that the Supreme Court, in *Beatty* v. *Brummett* (1884), 94 Ind. 76, in speaking of such a signing, said: "This is not the signing of the instructions contemplated by the fourth clause of section 533 R. S. 1881, but must be regarded as a signing of the exception." There being no affirmative showing that appellants tendered the instructions and requested their giving before the commencement of the argument, it will be presumed they were not tendered in time. *Jolley* v. *Terre Haute Drawbridge Co.* (1857), 9 Ind. 417; *Puett* v. *Beard* (1882), 86 Ind. 104; *White* v. *Sun Publishing Co.* (1905), 164 Ind. 426; *Fox* v. *Barekman* (1912), 178 Ind. 572; *Heintz* v. *Mueller* (1901), 27 Ind. App. 42. Notwithstanding the condition of the record, we have examined each of the refused instructions of which the complaint is made, and hold that the court did not err in refusing to give them.

The statute requires that the instructions given by the court on its motion, shall be signed by the judge. The statute does not require that they be dated. 15. We, therefore, hold that the instructions given by the court on its own motion being signed by the judge, though not dated, are in the record and that appellants' exceptions thereto are properly taken and reserved. 2 Watson, Revision Works' Prac. §1777.

Appellants contend that the court erred in giving to the jury on its own motion instructions Nos. 1 and 5, and in giving certain instructions tendered by plaintiff. The grounds for this contention are (1) that there is no evidence tending to prove fraud or undue influence and (2) that there is no proof of mental incapacity to execute the deeds in controversy. What we said in overruling appellants' contention that the court erred in refusing to instruct the jury to return a verdict for

them, and to withdraw the issue as to fraud, coercion and undue influence, disposes of the contention that the court erred in giving the instructions of which complaint is made.

And, in this connection, we observe that appellants are attempting to apply the same rule concerning undue influence that is applicable in case to set aside a will because of undue influence. But, as was said in *Shipman* v. *Furniss* (1881), 69 Ala. 555, 44 Am. Rep. 528: "There can, however, be no question about the fact that the same rule does not apply with equal force to benefactions received under *wills* and *deeds of gift,* but that there exists a well grounded distinction between the two classes of instruments. Stronger proof is, and manifestly should be required to raise a presumption of undue influence in the case of a will, than of a deed or contract, for the former, unlike the latter, can never take effect until the giver is dead, and, therefore, in a condition utterly incapacitating his further enjoyment or use of the subject of his testamentary disposition. Improper influence may be often inferred to have operated in producing *gifts,* where the same evidence would fail to authorize such an inference in case of a legacy or devise. * * * What constitutes undue influence is a question depending upon the circumstances of each particular case. It is a species of constructive fraud which the courts will not undertake to define by any fixed principles, lest the very definition itself furnish a finger-board pointing out the path by which it may be evaded."

No reversible error being pointed out, the judgment is affirmed.

Nichols, J., concurs in results.