LINCOLN NATIONAL LIFE INSURANCE
COMPANY *v*. JENSEN.

[No. 14,561. Filed March 7, 1934. Rehearing denied May 18, 1934. Transfer denied November 20, 1934.]

*Vesey, Shoaff & Hoffman, R. F. Baird, John D. Shoaff,* and *Cox & Adams,* for appellant.

*Miller & Miller, Samuel D. Miller, Sidney S. Miller,* and *Oscar R. Knutson,* for appellee.

BRIDWELL, P. J.—This appeal is from a judgment in favor of appellee and against appellant rendered in an action brought by appellee to recover on a life insurance policy issued by appellant to one Magnus Erickson, then the husband of appellee, wherein appellee was named as the beneficiary. The policy was of a dual nature in that it was therein contracted that appellant, in the event of the insured's death, would pay the beneficiary (appellee) according to its terms $10,000, and also, in the event the insured's death was due to "bodily injury effected directly through external, violent and accidental means (Suicide, sane or insane, or any attempt thereat, sane or insane, not included) exclusively and independ-

ently of all other causes" appellant would pay to said beneficiary double that sum. Upon the death of the insured $10,000 was paid appellee, but appellant denied further liability and this proceeding was begun.

The complaint sought recovery under the "Double Indemnity Benefit" provisions of the policy, alleging among other necessary averments, "that the death of the said Magnus Erickson resulted from bodily injury effected directly through external, violent and accidental means, exclusively and independently of all other causes . . . ; that on or about the 23rd day of November, 1928, said Magnus Erickson went into a barber shop to be shaved and that a barber, while shaving the insured, accidentally cut and punctured the skin of the insured upon his face, and that unknown to and unsuspected by said insured, or said barber, the instrumentality which caused said wound was accidentally infected with streptococci; that as a result of said cut, abrasion, or puncture a streptococcic infection started in the face of said insured and spread throughout his system and as a result he became infected and died on the 30th day of November, 1928." Appellant's answer to the complaint was a general denial. The cause was tried with a jury, which returned a verdict in favor of appellee for $11,420. Appellant filed it's motion for a new trial, which was overruled, and appellant excepted. Judgment was rendered on the verdict, and this appeal thereafter perfected, appellant assigning as error the overruling of its motion for a new trial.

The causes stated in the motion for a new trial that are presented by appellant under "Points and Authorities" as reasons why the court erred in overruling said motion, are that the verdict of the jury is not sustained by sufficient evidence; that such verdict is contrary to law; that the court erred in refusing upon the motion

of appellant made at the close of appellee's evidence, to instruct the jury to return a verdict for appellant; that the court erred in refusing, upon the motion of appellant made at the close of all the evidence, to instruct the jury to return a verdict for appellant; that the court erred in overruling appellant's objections to certain hypothetical questions propounded by appellee to certain witnesses testifying as experts, and erred in excluding from the evidence appellant's exhibit nine, such offered exhibit being the proofs of death of the insured, made by appellee and physicians attending the insured in his last illness.

Whether a new trial should have been granted for either of the first four causes above mentioned depends upon the sufficiency of the evidence to prove the material allegations of the complaint. In determining this question on appeal we consider only the evidence favorable to appellee.

There is evidence to establish that the death of the insured resulted from a streptococcic infection which started at a place on his chin where a small cut had been inflicted; that death occurred on November 30th, 1928, and the policy was in full force and effect at that time; that any cut or breaking of the outer skin will provide a port of entry for streptococcic germs; that these germs have no particular habitat; that they are prevalent and may be carried on the hands, or on instruments or any object which comes in contact with a wound; that on the 23rd day of November, 1928, the insured was in good health, and when he left home on that morning there was no cut, pimple, or abrasion on his face; that he, accompanied by his father-in-law, drove by automobile to a town about twelve miles distant from his home, and while there the deceased was shaved by a barber at approximately 11:30 a. m.; that the barber who shaved the decedent

kept his tools, including the razor with which he shaved the deceased, in a cabinet which contained formaldehyde in order to keep such instruments sterilized; that he (the barber), when shaving the deceased, stropped the razor he was using two different times upon a leather and canvas strop which hung on the side of the barber chair; that such stropping of the razor made it non-sterile; that the deceased, after being shaved, returned to his automobile and thereafter still accompanied by his father-in-law, drove to various places to look after business interests, returning to the home of his father-in-law about five o'clock p. m. where he remained for the evening meal, following which he and his wife returned home, the decedent going to a store which he conducted; that about seven or seven-thirty p. m. on this day an employee working at the store noticed a cut on decedent's chin a little to the right of the center of his chin; that the next morning at breakfast decedent's wife observed the cut and at this time it was "kind of reddish"; that the deceased went to his store on the morning of November 24th, and remained there until about two o'clock, p. m. when he returned home and went to bed; that a physician was called who examined the deceased about 4:30 p. m. and found him with a temperature of 101 and a pulse rate of about 100, and a small inflamed area on his lower chin, on the right side close to the mid-line with a surrounding redness and swelling, also a slight cough; that the insured's condition did not improve, and other physicians were called in consultation, but his condition became progressively worse until his death about 11 o'clock, a. m. on the morning of said November 30th; that the seat of the streptococcic infection which caused his death was at the place on his face where the cut appeared.

The testimony of the barber who shaved the insured on the morning of the 23rd, is to the effect that if he

cut the insured he did not notice it; that he did not observe any signs of any such cutting; that he gave him a close shave and might have cut or "nicked" him without knowing it. There is no direct evidence to prove any such fact, but the record does disclose where the insured went and what he did from the time he left the barber shop until the cut on his chin was noticed some hours later on the same day, and no facts or circumstances are disclosed by the record from which the jury might have concluded that the insured received the cut at any other time or place. We can not say as a matter of law that the jury, from the facts proven, had no right to draw the inference and find as an ultimate fact that the insured was accidentally cut by the barber while being shaved; neither can we say it was not justified in inferring from other facts proven that the razor used was the instrument that carried the streptococcic germs, which caused the infection resulting in death.

Evidence is not to be considered in fragmentary parts, but all facts and circumstances proven are to be considered together. The probative force of all the proved facts when so considered is determinative of the result which should be reached by the court or jury trying the cause.

It is not required that facts be proved by direct and positive evidence. The court or jury trying the cause may draw any reasonable inference, and if a fact may reasonably be inferred from the facts and circumstances which the evidence tends to establish, it is sufficient on appeal. *Carter* v. *Richart* (1917), 65 Ind. App. 255, 114 N. E. 110; *Indian Creek Coal etc., Co.* v. *Calvert* (1918), 68 Ind. App. 474, 496, 119 N. E. 519, 120 N. E. 709; *Hinshaw* v. *State* (1897), 147 Ind. 334, 47 N. E. 157; *Gears* v. *State* (1932), 203 Ind. 380, 396, 180 N. E. 585; Wigmore on Evidence (2nd Ed.) Section 41.

Appellant claims error by the court in overruling its objections to hypothetical questions which appellee propounded to certain of her witnesses (physicians testifying as experts) and in permitting such questions to be answered. It is asserted that such questions embraced and assumed as true facts of which there was no proof. Upon a consideration of the questions asked and the evidence introduced, we find that there is at least some evidence tending to prove all facts embraced in such questions. Moreover, the jury was instructed that it was not to be bound or concluded by the opinions expressed in the answers given, and were further told that "you are not to assume that the facts stated in such hypothetical question were true, merely because they were stated in such question. Upon the contrary, you are not to take them as true, unless they are established by the evidence; and the burden of proof rests upon the party assuming a state of facts in such hypothetical question to prove that they actually existed; and if you shall believe from all the evidence in the case that material and substantial portions of the facts assumed in the question did not in point of fact exist, then the value of such opinion is destroyed." An instruction to this effect would usually make harmless any error occurring by permitting an answer to a hypothetical question where some of the facts assumed were not sustained by proof. *Taylor* v. *Taylor* (1910), 174 Ind. 670, 93 N. E. 9.

The remaining alleged error presented relates to the exclusion from the evidence of appellant's offered "Exhibit Nine" (the formal proofs of insured's death made by appellee to appellant) appellant's contention being that in these "proofs" there was a statement that insured's death was complicated by influenza, and that the exhibit should have been admitted because this statement was a declaration against inter-

est. The forms used in making proofs of death contained among others the following questions: "Was last illness complicated with or induced by any previous illness or infirmity? If so what and when?" The exhibit consisted of statements made by way of questions and answers the answers being made either by the appellee, or by one of three physicians who attended insured in his last illness. The answer given by one of the physicians was: "Influenza"; the answer given by each of the other two physicians was: "No." All persons whose statements are contained in Exhibit Nine testified as witnesses, and were subject to cross-examination. One of these physicians, the one who was first called to attend the deceased, admitted on cross-examination that he had assigned influenza as a contributing cause of death, and that in the death certificate he had given influenza as a contributing factor; he also testified that he had made a statement to appellant to the same effect. We are of the opinion that the court's ruling in sustaining the objection to the admission of the offered exhibit, under the facts disclosed by the record, if erroneous, was not such error as to require a reversal of this cause.

The court did not err in overruling the motion for a new trial. Judgment affirmed.