BELL ET AL. *v.* MCCAIN ET AL.

[No. 15,240. Filed June 4, 1936.]

George C. Uhlir and Joseph C. Herron, for appellants.
Overson & Manning and Lloyd McClure, for appellees.

WOOD, P. J.—One Thomas Bell died unmarried and intestate, August 6, 1933, leaving as his only heirs surviving him three children, to wit, Sylvester Bell, the appellant, Minnie McCain, appellee, and Cora L. Seaver, who is of unsound mind, Mary Harness, her guardian, being designated as a party appellee herein in that capacity. After the death of Thomas Bell, the appellees instituted this action against the appellant Sylvester Bell and his co-appellant Sadie A. Bell, his wife, to set aside and cancel a certain deed executed by Thomas Bell to his son Sylvester Bell, appellant, conveying to him a tract of land in Howard County, Indiana, which deed is alleged to have been executed by Thomas Bell because of undue influence exerted over him, and while he was of unsound mind.

The complaint was in one paragraph, alleging undue influence and unsoundness of mind. The answer was a general denial. On these issues the cause was tried to the court without a jury, resulting in a general finding and judgment in favor of the appellees. Appellants filed a motion for a new trial, which was overruled, and this action of the trial court is the only error assigned for reversal. The causes alleged for a new trial were, that the decision of the court was not sustained by sufficient evidence, and was contrary to law.

The evidence discloses some undisputed facts which may be summarized as follows: Thomas Bell and his wife lived on a farm of 140 acres located a short dis-

tance west of the city of Kokomo on what is known as Jefferson Street Pike. He owned the farm in fee simple, and it was free of all incumbrances. His wife died July 21, 1930. On September 22, 1930, his daughters, Minnie McCain, and Cora L. Seaver, filed their verified petition in the Howard Circuit Court asking that a guardian be appointed for Thomas Bell, alleging in said petition that he was more than eighty-eight years of age, and infirm; that his hearing and eyesight were impaired; that he was incapable of managing and controlling his affairs and looking after his estate. Summons was ordered issued on this petition returnable October 4, 1930. On October 13, 1930, Thomas Bell went to the office of a lawyer in Kokomo, where "for love and affection, services rendered and hereafter to be rendered and other considerations" he signed and acknowledged the warranty deed, the validity of which is involved in this action, conveying the 140 acre farm to his son Sylvester Bell. Thomas Bell deposited this deed in escrow with the lawyer who prepared it, with instructions to hold it until Thomas Bell's death, when it was to be delivered by the lawyer to Sylvester Bell, the grantee named therein. This deed contained the following statements and reservations, to wit: "The grantor explains that for many years the grantee has cultivated his farm and dealt with him fairly and has without pay looked after the grantor and his wife, helped them about their home and affairs, made repairs for them, almost daily come to see them and looked after them and their affairs and given them the comfort of his personal attention, while the grantor's other children very seldom came to see him or inquired after him and his wife.

"The grantor makes this conveyance in part to reward the grantee for these services and kindnesses heretofore rendered.

"In consideration for this conveyance the grantee agrees to care for, support and maintain the grantor and furnish him food, shelter, clothing, medical treatment and care for him in all ways, giving to him a comfortable home, so long as he lives and give him a burial equal to or better than the burial the grantor gave his wife."

At the time of filing the petition to have Thomas Bell placed under guardianship and continuously thereafter until his death which occurred on August 6, 1933, he was infirm, his eyesight and hearing were both defective, he required assistance to get around from place to place, and remained in his room much of the time. His eyesight was so bad that he could not see to sign the deed and made his mark, could not see to walk from one room to another or on the street without help. A trial was had upon this petition before a jury in the Clinton Circuit Court, resulting in a verdict and judgment in favor of the petitioners and a guardian was appointed and qualified for Thomas Bell. An appeal was taken from this judgment to the Appellate Court, which appeal was dismissed after the death of Thomas Bell. See *Bell* v. *McCain* (1934), 98 Ind. App. 68, 188 N. E. 378. After Mrs. Bell's death, Thomas Bell lived in the home of his son Sylvester Bell, the entire time until the date of his death with the exception of eight days when he was with other parties. On February 13, 1932, while the proceedings for the appointment of a guardian were still pending, Thomas Bell, in company with the appellant Sadie A. Bell went to the office of the lawyer, who held the deed in escrow, where Thomas Bell took the deed out of escrow, and caused it to be placed on record in the deed records of Howard County, and thereafter delivered it to Sylvester Bell. On August 17, 1933, before the bringing of this action in the Howard Circuit Court, the appellees caused a written notice of

their disaffirmance of the deed in question to be served upon the appellants. Thomas Bell was ninety-one years old at the time of his death.

There was evidence in the record from which the court could find, that from the date of his wife's death until his own death, Thomas Bell lived in the home of appellants, Sylvester and Sadie A. Bell; that because of his infirmities he could not move from place to place without assistance and that some member of the Sylvester Bell family usually accompanied and assisted him on these occasions; that during this entire time Thomas Bell, because of his infirmities, was dependent upon the appellants and members of their family to supervise and manage the operation of his farm and look after his business affairs; that he was under the control and influence of appellants and surrounded by and in almost constant company of the various members of appellant's immediate family; that at the time he went to the lawyer's office to make the deed Sylvester Bell took him there, remained with him and was present during the entire time while the deed was being prepared, signed and acknowledged, and assisted him in leaving the office; that Sylvester Bell had knowledge at that time that Thomas Bell was not of sound mind, and was incapable of comprehending and managing his business affairs; that the farm was worth $125 per acre; that at the time Thomas Bell signed and acknowledged the deed in question he was of unsound mind.

The appellants have made a vigorous assault upon the sufficiency of the evidence to sustain the decision of the trial court. No question is presented as to the admissibility of the evidence, or its materiality to the issues tendered; it is its sufficiency alone to which our attention is directed. Evidence is not considered in fragmentary parts, but all facts and circumstances disclosed by the evidence should be consid-

ered together. The probative force of all facts proved by the evidence, when so considered, is determinative of the result which should be reached by the court trying the cause. It is not required that facts be proved by direct and positive evidence, but the court trying the cause may draw any reasonable inference therefrom, and if a fact may reasonably be inferred from the facts and circumstances which the evidence tends to establish, it is sufficient to sustain the decision of the lower court on appeal, and this court will consider only the evidence most favorable to appellee in determining its sufficiency to sustain the decision of the trial court. *Lincoln, etc., Co.* v. *Jensen* (1934), 99 Ind. App. 397, 189 N. E. 169 (transfer to the Supreme Court denied November 20, 1934). When the evidence is conflicting, the facts found by the trial court will not be disturbed on appeal if there is any evidence to sustain such finding. *Humphries* v. *McAuley* (1933), 205 Ind. 469, 187 N. E. 262; *Brown* v. *Brown* (1933), 205 Ind. 664, 187 N. E. 836.

Appellants insist that before the appellees were entitled to have the deed set aside, because of unsoundness of mind of the grantor Thomas Bell, they should have alleged and proved that the grantee, Sylvester Bell, at the time of the execution of the deed and its acceptance by him, knew that Thomas Bell was a person of un-- sound mind, and that upon failure to allege and prove these facts, it was incumbent upon the appellees, not only to prove disaffirmance of the deed before bringing suit to set it aside, but in their complaint to have offered to make restitution to the appellants, and to place them in *statu quo,* so that under such offer the court could have so molded its decree as to have adjusted all matters between the parties and protected whatever rights, if any, the appellants were shown to be entitled to.

In the case of *Barkley* v. *Barkley* (1914), 182 Ind.

322, 106 N. E. 609, our Supreme Court announced the rules and distinguished their application in the class of cases to which the instant case belongs, in the following language (p. 326) : "The rule as to the disaffirmance of conveyances and other executed contracts of persons of unsound mind before *office* (officially) found so far as the very broad statement of it made above is concerned, strictly is applicable to cases where the person who dealt with the alleged mentally incapable one had no knowledge of such incapacity to contract at the time, dealt fairly with him and parted with a valuable consideration. In such cases there must be a disaffirmance and tender back of the consideration or, at least, in equity an offer to return it, before a suit to set aside and cancel the conveyance can be maintained. The rule is for the protection of one who has acted in good faith. He is, in such case, entitled to notice of disaffirmance so that he may restore what he has received, without suit and costs if he chooses, and he is entitled to be placed in *statu quo* if he has given a valuable consideration for that which he has received. But knowledge by one of the contracting parties of the mental incapacity of the other and lack of any consideration paid work a material modification of the rule. It is settled where the mental incompetency of the one who has made the conveyance or other contract is known to the other at the time it was made no allegation of a tender or offer to restore the consideration is a necessary averment of the complaint. *Thrash* v. *Starbuck* (1896,), 145 Ind. 673, 44 N. E. 543; *Studabaker* v. *Faylor* (1908), 170 Ind. 498, 83 N. E. 747, 127 Am. St. 397; 1 Elliott, Contracts, §386. Such knowledge destroys good faith and when coupled with want of or gross inadequacy of consideration establishes fraud. 1 Elliott, Contracts, §379. See also *Wells* v. *Wells* (1926), 197 Ind. 236, 150 N. E. 361.

There were averments in the complaint which would

compel the inference that appellants had knowledge of the unsoundness of mind of Thomas Bell, at the time of the execution of the deed, which would exclude any other inference. The complaint also alleged want of consideration and notice of disaffirmance of the deed. There was sufficient evidence from which the court could find these allegations of the complaint to have been proved; there was also sufficient evidence to sustain the finding of the court that Thomas Bell was of unsound mind at the time of the execution of the deed. This being true, the evidence is sufficient to sustain the decision of the court, in the absence of any evidence of undue influence or fraud. *Folsom* v. *Buttolph* (1924), 82 Ind. App. 283, 143 N. E. 258 (transfer to Supreme Court denied December 17, 1924).

Having reached the above conclusion it is not necessary for us to consider other questions which appellants discuss in their brief.

Finding no reversible error the judgment is affirmed.