HELEN HUNTER *v.* STANLEY D. MILHOUS, RUTH C. MILHOUS.

[No. 2-573A117.  Filed December 28, 1973.  Rehearing denied February 12, 1974.]

*David W. Foley, Mullin, Foley & Laswell,* of Indianapolis, for appellant.

*James A. Buck,* of Indianapolis for appellee Stanley D. Milhous, *Sidney Horn,* of Indianapolis, *Howard J. DeTrude,* of Indianapolis and *Paul E. Blackwell,* of Indianapolis, attorneys for appellee Ruth C. Milhous.

SULLIVAN, J.—Defendant-appellant Helen Hunter (Hunter) appeals from a judgment nullifying two deeds of real estate

allegedly conveyed to her by co-defendant below Stanley D. Milhous (Milhous).

## FACTS

Hunter first met Milhous, an 85 year old man, in the fall of 1970 while she was an employee of a drug store. Milhous frequently came into the store and the two would casually chat. In November, 1970, Hunter ceased that employment and did not see Milhous again until September of 1971 when a John Hirschler (an alleged retired minister) brought Milhous to see her. The three talked for approximately ten minutes, after which Hirschler and Milhous left. About two weeks later, Hirschler and Milhous returned to see Hunter. The conversation at this meeting concerned a car Hunter desired to purchase. The car was advertised in a local paper by John Shindler, an attorney. The three proceeded to Shindler's residence to discuss the purchase of the car. As the trio were leaving, Shindler gave them his card and said if they ever needed an attorney to give him a call. One or two more casual visits took place between Hirschler, Hunter and Milhous.

On October 20, 1971, Shindler made up a form which designated Hunter as having Power of Attorney for Milhous. The instrument reads as follows:

"POWER OF ATTORNEY. Know all Men by These Presents That *Stanley D. Milhous of Bridgeport, County of Marion, State of Indiana* has made, constituted and appointed, and by these presents do make, constitute and appoint *Helen Hunter of Indianapolis, County of Marion, State of Indiana* true and lawful Attorney for *him* and in *his* name, place and stead. *to execute all legal documents, notes, contracts, and assignments relating to property, real and personal, tangible and intangible, wherever located, to sign bank checks and drafts, to convey and receive property of whatever description without restriction* giving and granting unto *Helen Hunter* said Attorney, full power and authority to do and perform all and every act and thing whatsoever requisite and necessary to be done in and about the premises, as fully to all intents and purposes as *he, Stanley Milhous* might or could do if personally present,

with full power of substitution and revocation, hereby ratifying and confirming all that *Helen Hunter* said Attorney or *her* substitute shall lawfully do or cause to be done by virtue thereof.

IN WITNESS WHEREOF *I* have hereunto set *my* hand *my* and seal, this *20* day of *October* in the year one thousand nine hundred and *71*.

/s/ *Stanley D. Milhous*
STANLEY D. MILHOUS

Signed and delivered in the presence of
    Two Witnesses:
/s/ *Deatrice Elaine Bumpus*
/s/ *John T. Shindler*

This Document Prepared by *John T. Shindler, Attorney at Law.*

    *10-20-71*
/s/ *Ralph E. Hubbard*
    *My Com. Expires Aug. 14, 1972*"

(The herein emphasized portions of the instrument were typewritten insertions filling blanks in the otherwise printed form.)

Hunter was to use this power of attorney to manage Milhous' financial and business affairs. Hunter had no prior experience in such fiduciary matters.

Beginning in December, 1971, Hunter, via her Power of Attorney, withdrew $25,000 of Milhous' money which he had on account at various banks. $24,000 of Milhous' money was disposed of by Hunter in a very short period of time. The remaining $1000 was placed in Hunter's son's banking account. The bulk of the money disposed of was allegedly used to finance Milhous and Hunter's expenses for a trip to the west coast. $7000 was given to Shindler for attorney's fees for services allegedly rendered Milhous and a 1969 automobile was purchased and registered in Hunter's name with a portion of the money. In addition to the $25,000, several social security checks belonging to Milhous were sent to Shindler

who then delivered them to Hunter. Hunter placed the proceeds from these checks in her own account.

In March, 1972, Shindler accompanied Milhous to Las Vegas allegedly to assist Milhous in divorce proceedings against plaintiff-appellee Ruth C. Milhous (Wife). After staying at Shindler's sister's home for an undetermined period of time, Milhous was placed in a nursing home under the name of Stanley D. Brown. Hunter withdrew $400.00 from Milhous' account and sent it to Shindler's sister to pay for a portion of the nursing home bill. The check was cashed, but the bill remained unpaid. Another $580.00 was taken from Milhous' accounts by Hunter and sent to Shindler's sister for a down payment on a home in Las Vegas that Milhous allegedly wished to purchase. The $580.00 disappeared. Hunter did eventually pay $1200.00 on the nursing home bill.

Two pieces of real estate were purportedly transferred by Milhous to Hunter without any consideration. It is this transaction which is the subject of this appeal. The deeds were prepared by Shindler and executed at his home. One deed contained no witness signatures and the other deed was witnessed by Shindler and a Charles Moske. Both deeds were notarized by Ralph Hubbard who was not present during the signing of the deeds.

On November 30, 1972, James Buck was appointed guardian of Milhous and his estate after the Marion County Probate Court adjudged Milhous to be incompetent. On December 1 and 2, 1972, Buck conversed with Milhous in Las Vegas. According to Buck's testimony, Milhous told Buck that he did not intend to convey the two pieces of real estate and that if he did convey them, he would like to have them returned. Milhous stated that when he signed papers in Shindler's office, neither Hunter nor the notary were present.

Milhous' wife filed a complaint in this matter against Hunter and Milhous on February 17, 1972 seeking to set aside the conveyances which was answered by Hunter on July

28, 1972. Service upon Milhous was not obtained during that period and no answer was filed on his behalf. The case was set for trial for November 22, 1972 but on that date it was continued until December 14, 1972. On December 11, Milhous, by his Guardian, filed an answer to his wife's complaint. On December 13, 1972, Hunter filed a counterclaim against Mrs. Milhous for malicious prosecution and a request for jury trial. On December 14, 1972, Mrs. Milhous filed a motion to strike Hunter's request for jury trial and counterclaim which the trial court sustained. On this same date, Hunter made a motion for change of venue and for a continuance, both of which the trial court overruled and the case proceeded to trial.

## ISSUES

Hunter presents the following issues for review:

1. The court erred in striking her counterclaim.
2. The change of venue was erroneously denied.
3. The request for continuance was erroneously denied.
4. The court erred in allowing plaintiff to amend her complaint to conform to the evidence.
5. The court erred in allowing hearsay testimony.
6. The court erred in finding the deeds to be invalid.

## STRIKING OF THE COUNTERCLAIM FOR MALICIOUS PROSECUTION WAS PROPER

Hunter's counterclaim was premised upon a theory that Mrs. Milhous' complaint was filed maliciously in order to place a cloud upon title to the real estate. Hunter argues that the counterclaim was compulsory and comes within the ambit of Trial Rule 13(A) because it arises out of the same transaction and occurrence as covered by the complaint. Hunter admits that compulsory counterclaims should be filed at the time the first responsive pleading is filed but argues that Trial Rule 13(F) would still allow her to file the counterclaim with leave of court. She contends that since she would be otherwise forever barred on her counterclaim, the court abused its discretion by dismissing it.

To come within the scope of Trial Rule 13(A), a claim must have "matured".[1] If the claim has not matured, it states no cognizable cause. Hunter's claim for malicious prosecution had not matured because the relief sought is dependent upon Mrs. Milhous' failure to prevail in her action against Hunter. *Dwyer* v. *McClean* (1961), 133 Ind. App. 454, 175 N.E.2d 50. The interpretation herein placed upon Hunter's counterclaim is in accord with federal cases interpreting the rule from which our own Trial Rule 13 is derived. *Olsen* v. *Puntervold* (5th Cir. 1964), 338 F. 2d 21; *Knoshaug* v. *Pollman* (1956), 18 FRD 386; *Bach* v. *Quigan* (1945) 5 FRD 34.

In *Knoshaug* v. *Pollman, supra,* the court stated:

"That the primary action upon which malicious prosecution is based has terminated in defendant's favor before the commencement of an action for malicious prosecution is necessary for its maintenance, see Schaefer v. Cremer, 19 S.D. 656, 104 N.W. 468, and Redahl v. Stevens, 64 N.D. 154, 250 N.W. 534.

\* \* \*

A counterclaim predicated upon malicious prosecution of the action in which such counterclaim was filed should be dismissed. Park Bridge Corporation v. Elias, D.C., 3 F.R.D. 94. It is true that Rule 13, Federal Rules of Civil Procedure; 28 U.S.C.A., providing for counterclaims and cross-complaints, was designed for swift and just disposition of legal disputes, but it was not contemplated that *any* set of facts which might eventually constitute a claim on which relief can be granted should be interposed as a counterclaim to an action." 18 F.R.D. at 388

The court's dismissal of Hunter's counterclaim was proper.

### THE TRIAL COURT'S DENIAL OF A CHANGE VENUE WAS JUSTIFIED BECAUSE OF UNTIMELINESS AND THE FAILURE TO SHOW GOOD CAUSE

Trial Rule 76(1) and (2) read as follows:

"(1) In all cases where the venue of a civil action may now be changed from the judge or the county, such change shall be granted upon the filing of an un-

---

1. Trial Rule 13(E) makes provision with leave of the court for filing of counterclaims which matured or were acquired by the pleader after service of his responsive pleading.

verified application or motion without specifically stating the ground therefor by a party or his attorney. Provided, however, a party shall be entitled to only one [1] change from the county and only one [1] change from the judge.

(2) In any action except criminal no change of judge or change of venue from the county shall be granted except within the time herein provided. Any such application for a change of judge or change of venue shall be filed not later than ten [10] days after the issues are first closed on the merits."

Hunter filed her motion on December 14, 1972, the date of trial. Hunter contends that since Stanley Milhous did not file his answer until December 11, 1972, the issues were not first closed on the merits until that date. She claims "automatic"[2] entitlement to a change of venue by virtue of having filed her motion within 10 days after December 11, 1972.

Whether or not the issues are first closed on the merits by the first answer or by the last answer in a multi-defendant suit seems to be a beclouded point in Indiana law. *See State ex rel. Mays* v. *Fayette Circuit Court* (1968), 250 Ind. 205, 231 N.E.2d 255, *vacated* (1968), 250 Ind. 205, 235 N.E.2d 706. Nevertheless, we find it unnecessary to attempt to disperse this cloud because of Trial Rule 76(7) which states:

"Provided further, a party shall be deemed to have waived a request for a change of judge or county if a cause is set for trial before the expiration of the date within which a party may ask for a change, evidenced by an order book

---

2. Trial Rule 76(2) renders granting of a change of venue mandatory if the request is timely. *State* v. *Lake Circuit Court* (1973), 260 Ind. 73, 292 N.E.2d 596; *State ex rel. Hohlt* v. *Superior Court of Marion County* (1971), 256 Ind. 544, 270 N.E.2d 761; Harvey, 4 *Indiana Practice*, § 76.2, p. 553. The predecessor to Trial Rule 76 (Supreme Court Rule 1-12B) also contained a mandatory requirement for granting a change of venue timely requested. *Moore* v. *Fletcher* (1964), 136 Ind. App. 478, 196 N.E.2d 422. It has been said that the general rule deems the issues first closed "at that point during the proceedings when the pleadings have formulated the issues of the controversy which are to be tried." 4 Harvey, *Indiana Practice*, § 76.3, p. 554. When the pleadings consist only of a complaint and an answer, the issues are first closed when the defendant files the answer. *State ex rel. Hohlt* v. *Superior Court of Marion Co., supra.*

entry and no objection is made thereto by a party as soon as such party learns of the setting for trial. Such objection, however, must be made promptly and entered of record, accompanied with a motion for a change from the judge or county (as the case may be) and filed with the court."

In the instant case, the court on November 16, 1972 set the date of trial for November 22, 1972. On November 22, 1972 the court continued the date of trial until December 22, 1972. No objection of record was made by Hunter on either date. Assuming, arguendo, that the issues were not closed upon the merits until Milhous' answer, Hunter could not benefit thereby because she waived her right to a mandatory change of venue by failing to object to the trial setting. An extreme example of waiver pursuant to Trial Rule 76(7) is expressed in *State ex rel. Gatewood* v. *Hamilton Circuit Court* (1967), 248 Ind. 248, 225 N.E.2d 826. There, the Supreme Court applying Rule 1-12B(7), the predecessor of TR. 76(7) and identical in its language, decided that although the cause was not at issue, the setting of the trial date without objection on the part of the defendant constituted waiver. A similar result occurred in *Toles* v. *Sohol* (1971), 256 Ind. 291, 268 N.E.2d 71 in which the defendant was charged in Illinois with car theft and the Governor of Indiana issued a warrant on June 18, 1969. On June 23, defendant filed a petition for Writ of Habeas Corpus against the Sheriff. The Writ was granted and on June 23, a hearing was set for June 27. On June 27, the hearing was continued until June 30. On June 30, the defendant filed a motion for change of venue from the judge, which was denied because not timely filed. Defendant relied on Trial Rule 76(2) arguing that his motion was timely. The Supreme Court, citing Trial Rule 76(7), deemed as a waiver of the right to a change of judge the defendant's lack of objection to the setting of the trial date.

In *Grothe* v. *Herschbach* (1972), 153 Ind. App. 224, 286 N.E.2d 868, the court decided that a lack of objection to the setting of trial on a cross-complaint and counterclaim was a

waiver of the right to a subsequent request for change of venue.

The waiver provision contained in Trial Rule 76(7) is consonant with the overall purpose of the timeliness provision contained in Trial Rule 76(2). The purpose of timeliness in our procedure governing changes of venue is to reduce the unnecessary delay occasioned by the late filing of change of venue petitions which have as their real object the postponement or avoidance of trial. The rule contemplates expeditious trials and avoidance of delay or dilatory practice. *State ex rel. Mays* v. *Fayette Circuit Court, supra; Grothe* v. *Herschbach, supra.*

We conclude that the failure of Hunter to object at the time trial was set constitutes waiver of any right to compel a change of venue from the county.

Hunter contends that despite any holding against her with respect to an automatic change of venue, she nevertheless was entitled to discretionary relief pursuant to Trial Rule 76(8). Hunter states that several newspaper articles printed in the Indianapolis Star concerning the circumstances surrounding the case created local prejudice against her. This prejudice, she argues, resulted in an odium attaching to her defense and the trial court's denial of the change of venue motion without a hearing, was a denial of her right to a fair trial.

Trial Rule 76(8) states:

"Provided, however, if the moving party first obtains knowledge of the cause for change of venue from the county or judge after the time above limited, he may file said application, which must be verified personally by the party himself, specifically alleging when the cause was first discovered, how discovered, the facts showing the grounds for a change, and why such cause could not have been discovered before by the exercise of due diligence. Any opposing party shall have the right to file counter-affidavits on such issue within ten [10] days, and the ruling of the court may be reviewed only for abuse of discretion."

It thus permits a change of venue upon showing of "good cause" even though the time for filing a request for a manda-

tory change of venue has expired. To activate Trial Rule 76(8), the moving party must file a verified motion specifically alleging the following:

(1) when the cause was first discovered;
(2) how the facts were discovered;
(3) the specific facts showing cause; and
(4) why the cause could not have been discovered sooner through the exercise of due diligence.

Harvey, 4 *Indiana Practice* § 76.7, p. 560

Even assuming, arguendo, that Hunter's Motion for Change of Venue met requirements (1), (2) and (4) above, it does not set forth "good cause". IC 34-1-13-1, Ind. Ann. Stat. § 2-1401 (Burns 1967) enumerates situations in which a change of venue from the county or from the judge is permitted for good cause. Hunter asserts that she meets the "good cause" requirement provided in § 2-1401(3) which states:

"The court in term, or the judge thereof in vacation, shall change the venue of any civil action upon the application of either party made upon affidavit showing one (1) or more of the following causes:

\* \* \*

Third. That the opposite party has an undue influence over the citizens of the county, or that an odium attaches to the applicant, or to his cause of action or defense, on account of local prejudice."

The record clearly discloses here that the case was tried to a judge without the intervention of a jury. However, Hunter does not allege that the trial judge was prejudiced in any manner. She proceeds solely upon the theory that if prima facie cause is shown under § 2-1401(3) and the requirements of Trial Rule 76(8) have been met, it is mandatory for the trial judge to grant a hearing on the issue of local prejudice.

§ 2-1401 contemplates two distinct types of venue changes: a change of venue from the county and a change of venue from the judge without changing the county. The history of

this curious combination dates to an 1881 statute, Ind. Acts Spec. Sess. 1881, ch. 38, § 255. Prior to 1881, there were separate causes for a change of judge vis a vis a change of county. Ind. Acts 1859, ch. 85, § 208. However, the exclusive character of these separate causes has remained in the present law contained in § 2-1401. Undue influence or odium due to local prejudice would then appear to be only applicable to a change of venue from the county. See IC 34-1-13-2 Ind. Ann. Stat. § 2-1406 (Burns 1967); Crumpacker, The Change of Venue Problem, 20 *Ind. L.J.* 283 (1945). However, we observe that there is no statutory provision specifically restricting the use of § 2-1401(3) to changes from the county and it is perhaps theoretically possible to utilize this section for a change of judge.

The purpose of a change of venue is twofold: (1) to insure the right to a fair trial before a fair and impartial judge, *Thorne* v. *Silver* (1910), 174 Ind. 504, 89 N.E. 943, and (2) to insure trial in a county unaffected by prejudice, *Brow* v. *Levy* (1891) 3 Ind. App. 464, 29 N.E. 417. However, there exists a competing policy consideration, the expeditious disposal of litigation. *Mays* v. *Fayette Circuit Court, supra.* The structure of Trial Rule 76 is to achieve a balance between these two competing policy considerations. The consideration of justice in certain circumstances will justify a delay in the proceedings when there is a genuine need for a change of judge or county. Harvey, 4 *Indiana Practice*, § 76.1, p. 551.

In the instant case, the only possible impediment to Hunter's right to a fair trial would be the bias or unfairness of the trial judge. We agree with Hunter that in our system of justice the defendant is entitled to a fair trial which includes the right to an unbiased trier of fact and law. However, the law also presumes that the trial judge is unbiased and unprejudiced. *Thorne* v. *Silver, supra.* Hunter had both the right and the opportunity to seek a change of judge but failed to do so.

Hunter would have us decide that she was denied a fair

trial because of local prejudice without a showing or allegation that the individual sitting in judgment, as trier of fact, was somehow contaminated by this prejudice. We decline this offer.

We find that a party desiring a change of venue either from the county or from the judge after the time for an automatic change has expired must show a genuine need for such a change. This need must be directly related to the right to an unbiased trier of fact. A party cannot, upon a mere showing of statutory cause unrelated to the need, demand the right to a change of county or judge. A request for change of venue from the county based upon local prejudice cannot invoke Trial Rule 76(8), when a case is tried to the court, unless accompanied by a showing of prejudice or bias on the part of the judge.

## DENIAL OF CONTINUANCE WAS PROPER EXERCISE OF COURT'S DISCRETION

Hunter contends that her motion for continuance was improperly denied in that she complied with the requirements of Trial Rule 53.4. In effect, Hunter argues that once cause is shown pursuant to Trial Rule 53.4, the court must grant the continuance. Hunter's ground for continuance is identical to her stated ground for cause for a change of venue due to local prejudice.

Trial Rule 53.4 reads in pertinent part:

"Upon motion, trial may be postponed or continued in the discretion of the court, and shall be allowed upon agreement of all the parties or upon a showing of good cause established by affidavit or other evidence."

In light of our determination concerning Hunter's request for change of venue from the county, we conclude that Hunter has failed to show good cause for continuance. Accordingly, it was within the proper exercise of the court's discretion to deny the continuance.

## GRANTING OF PLAINTIFF'S MOTION FOR AMENDMENT OF COMPLAINT PURSUANT TO TRIAL RULE 15(B) WAS NOT ABUSE OF DISCRETION

Hunter contends that Mrs. Milhous should not have been allowed to amend her complaint to conform with the evidence.

Indiana Trial Rule 15(B) provides:

"When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment, but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence."

Hunter failed to object to the admission of testimony bearing upon such new issues nor did she object at the time plaintiff requested that the complaint be amended to conform to the evidence. At no time did Hunter request a continuance in order to prepare a defense to meet the new issues. In *Indpls. Transit System, Inc.* v. *Williams* (1971), 148 Ind. App. 649, 269 N.E.2d 543, the court held:

"Whether the 'issues' to be tried in any law suit are formed by the pleadings or in a pre-trial order, their function is merely to provide the parties and the court with an itinerary for the journey through the trial. *Either party may timely demand strict adherence to the pre-determined route or, if deviation is permitted, the time necessary to prepare to meet the new issue. But when the trial has ended without objection as to the course it took, the evidence then controls.* Neither pleadings, pre-trial orders, or 'theories' postulated by either party should then operate to frustrate the trier of fact in finding the facts

which that evidence (including all reasonable inferences the trier may draw therefrom) convinces him (whether he be a judge or juror), by a preponderance thereof, is true or block him from awarding the relief, if any, which the rules of substantive law say those facts merit." (Emphasis supplied) 269 N.E.2d at 550

In *Ayr-Way Stores, Inc.* v. *Chitwood* (1973), 261 Ind. 86, 300 N.E.2d 335, the defendants alleged that the denial of their request for continuance was an abuse of discretion. There the plaintiff's complaint alleged breach of express warranty and negligence. After the plaintiff's case in chief, the plaintiff moved to amend his complaint pursuant to Trial Rule 15(B). The amendment consisted of two additional theories, i.e., strict liability and breach of implied warranty. Although the defendants objected to the addition of the two new theories, they made no objection to *the evidence presented* during the plaintiff's case in chief. In affirming the trial court's denial of defendant's request for continuance, the Court noted that the policy of the new Code of Civil Procedure was to simplify the procedure of pleading. Thus, the former rules concerning common law theory of pleading issues and the Field Code theory of pleading facts have been replaced by the present theory of "notice pleading". Justice Hunter speaking for the Court stated:

"It cannot be denied that the policy behind Trial Rule 15(B) is to promote relief for a party based upon the evidence actually forthcoming at trial, notwithstanding the initial direction set by the pleadings." 300 N.E.2d at 338

In the present case, since Hunter not only failed to object to the evidence presented at trial but also failed to object to the motion to have the complaint conform to the evidence, the trial court did not abuse its discretion in granting plaintiff's Motion.

## APPELLANT'S CONTENTION WITH RESPECT TO IN-ADMISSIBLE HEARSAY NEED NOT BE CONSIDERED SINCE GENERAL FINDING OF TRIAL COURT IN FAVOR OF PLAINTIFF UPON THE ULTIMATE ISSUE IS SUPPORTED BY THE EVIDENCE

Although none of the parties made request for special findings of fact, the court found as follows:

> "This cause came before the Court for trial with the issues being framed by the plaintiff, Ruth C. Milhous' complaint for cancellation of deed, with said complaint being in two legal paragraphs and upon the answers of the defendants, Helen Hunter and Stanley D. Milhous, this 14th day of December, 1972.

> The Court having heard all of the evidence in this cause, and being duly advised in the premises, *now finds for the plaintiff upon both legal paragraphs of her complaint and against both defendants.* The *Court specifically finds* that, inter alia, there was no consideration given by the defendant, Helen Hunter to the defendant Stanley D. Milhous for the conveyance of the two pieces of real estate involved in this cause of action and that both deeds were improperly executed and that there was no delivery of said deeds to the following described property, to-wit: \* \* \*" (Emphasis supplied)

Hunter attacks the special findings made by the trial court on the basis, in part, that lack of consideration or defective acknowledgment does not defeat a deed in Indiana. With these contentions, we agree.[3] According to Hunter, the only relevant issue is delivery and she argues that the only evidence concerning delivery was by way of inadmissible hearsay.

We need not resolve this issue, however, since the judgment upon the ultimate issue, i.e., validity of the deeds, is supported by the general finding of the trial court, which general finding was appropriate in light of the evidence.

---

3. Lack of consideration alone is not sufficient cause for setting aside a deed. *Aldrich* v. *Amiss* (1912), 178 Ind. 303, 99 N.E. 419. An unacknowledged instrument is binding between parties and their privies. *Beneficial Finance Co. of Indianapolis* v. *Nelson* (1958), 129 Ind. App. 23, 153 N.E.2d 613.

Findings of fact may be either general or special. A general finding is a finding in favor of one party and against the other. *Baldwin* v. *Roussey* (1922), 192 Ind. 300, 136 N.E. 85. A special finding on the other hand contains all the facts necessary for recovery by the party in whose favor the conclusions of law are found and should contain a statement of the ultimate facts from which the trial court determines the legal rights of the parties to the action. *Universal Insurance Co.* v. *Glover* (1935), 100 Ind. App. 327, 195 N.E. 583. A more refined definition of general and special findings is contained in *Larsen* v. *Martin* (1943), 172 Ore. 605, 143 P.2d 239 in which the Supreme Court of Oregon stated:

> "A general finding is like a general verdict of a jury, by which the court finds generally in favor of one of the parties and against the other. *Norris* v. *Jackson*, 9 Wall. 125, 127, 19 L.Ed. 608. A special finding is 'a statement of the ultimate facts on which the law of the case must determine the rights of the parties; a finding of the propositions of fact which the evidence establishes, and not the evidence on which those ultimate facts are supposed to rest.'" 143 P.2d at 241

At present the provision for findings of fact is contained in Trial Rule 52. Rule 52(A) states in part:

> "In the case of issues tried upon the facts without a jury or with an advisory jury, the court shall determine the facts and judgment shall be entered thereon pursuant to Rule 58. Upon its own motion, or the written request of any party filed with the court prior to the admission of evidence, the court in all actions tried upon the facts without a jury or with an advisory jury (except as provided in Rule 39[D]) shall find the facts specially and state its conclusions thereon. The court shall make special findings of fact without request
>
> (1) in granting or refusing preliminary injunctions;
> (2) in any review of actions by an administrative agency; and
> (3) in any other case provided by these rules or by statute."

Prior to Trial Rule 52(A) a "volunteered" special finding by the trial court, i.e., a special finding without a request by

either party, was considered a general finding. *Merchants National Bank & Trust Co.* v. *Winston* (1959), 129 Ind. App. 588, 159 N.E.2d 296. Rule 52(A), however, now authorizes the trial court to "volunteer" special findings.

With respect to findings upon less than all the issues, Trial Rule 52(D) states:

> "Findings upon part of the issues. The court may make special findings of fact upon less than all the issues in a case when
>
> (1) special findings of fact are made but are not required under this rule; or
> (2) findings are required because of the request of a party or parties who have demanded findings only upon such specified issues.
>
> The court's failure to find upon a material issue upon which a finding of fact is required by this subdivision of this rule shall not be resolved by any presumption and may be challenged under subdivision (B) of this rule; but findings of fact with respect to issues upon which findings are not required shall be recognized as findings only upon the issues or matters covered thereby and the judgment or general finding, if any, shall control as to the other issues or matters which are not covered by such findings."

Prior Indiana law developed various rules concerning special findings upon less than all the issues. For example, all facts not contained in a requested special finding were regarded as not proved by the party having the burden of proof. *Korschot* v. *Leevy* (1961), 135 Ind. App. 411, 178 N.E.2d 750. Further, where no request for special findings were made, an "amplified" finding was treated as a general finding and all special findings were disregarded. *Huber* v. *Huber* (1960), 131 Ind. App. 96, 164 N.E.2d 651; *Altmeyer* v. *Norris* (1954), 124 Ind. App. 470, 119 N.E.2d 31.

But Trial Rule 52(D) allows a trial court to make specific findings on less than all the issues and a general finding which is determinative as to the remaining issues. Accordingly, all prior decisions which are inconsistent with the allowance of both general and special findings when volunteered by a trial court have been superseded.

The findings of the trial court in the instant case contain both a general finding and a special finding. Trial Rule 52(D) states that the special findings control only as to those issues covered by the special findings and that the general finding controls issues not covered by the special findings.

When a general finding is made and the decision of the trial court is sustainable on any theory which the evidence supports, the reviewing court must affirm. *Indiana & Michigan Electric Company* v. *Schnuck* (1973), 260 Ind. 632, 298 N.E.2d 436; *Lindenborg* v. *M&L Builders and Brokers, Inc.* (1973), 158 Ind. App. 311, 302 N.E. 2d 816.

## GENERAL FINDING IN FAVOR OF PLAINTIFF AND JUDGMENT NULLIFYING DEEDS WAS SUPPORTED BY EVIDENCE OF GRANTEE'S EXERCISE OF UNDUE INFLUENCE UPON GRANTOR

The evidence here of record, excluding the evidence with respect to those matters covered in the special findings, would be sufficient to support a finding of undue influence and therefore supports the general finding and judgment nullifying the conveyances in question.

Undue influence is the exercise of sufficient control over the person, the validity of whose act is brought into question, to destroy his free agency and constrain him to do what he would not have done if such control had not been exercised. *Baker* v. *Whittaker* (1961), 133 Ind. App. 347, 182 N.E.2d 442; *Folsom* v. *Buttolph* (1924), 82 Ind. App. 283, 143 N.E. 258. In *Folsom,* the court stated:

"As bearing on the question of undue influence, the relationship of parties to each other, the mental condition of the person whose act is in question, and the character of the transaction, should be taken into consideration. If the relation of confidence and trust between the parties to the transaction exists; if the mind of the one nominally acting is weak and susceptible, and if the transaction results beneficially to the person charged, and detrimentally to the

person in whose name the act was done, a presumption of undue influence is raised, and the burden is placed on the one claiming the benefit of the transaction to prove that the act was voluntary and no unfairness was used. Indeed, the presence of the relation of confidence and trust alone is generally sufficient to raise a presumption of undue influence; so, also, if the party acting be of weak mind and there is either no consideration, or a very inadequate one, a presumption against its validity arises." 82 Ind. App. at 296-297

The relationship necessary to create the presumption of undue influence exists when confidence is reposed on one side and accepted on the other. This fiduciary relationship need not be a legal one; it may be moral, social, domestic or personal. *McCord* v. *Bright* (1909), 44 Ind. App. 275, 87 N.E. 654.

In *Keys* v. *McDowell* (1913), 54 Ind. App. 263, 100 N.E. 385, the court held:

"There are certain legal and domestic relations in which the law raises a presumption of trust and confidence on one side and a corresponding influence on the other. The relation of attorney and client, guardian and ward, principal and agent, pastor and parishioner, husband and wife, parent and child belong to this class and there may be others. Where such a relation exists between two persons and the one occupying the superior position has dealt with the other in such a way as to obtain a benefit or advantage the presumption of undue influence arises." 54 Ind. App. at 269

Quite clearly the power of attorney in Hunter created a fiduciary relationship between her and Milhous.

The record reveals that the two deeds in question were transferred to Hunter without consideration. The general rule as hereinbefore acknowledged is that lack of consideration alone is insufficient cause for setting aside a deed. *Aldrich* v. *Amiss* (1912), 178 Ind. 303, 99 N.E. 419. However, a lack of consideration combined with a fiduciary relationship as here, does give rise to a presump-

tion of undue influence and thus against the validity of the deeds. *Folsom* v. *Buttolph, supra; Keys* v. *McDowell, supra.*

The factors of Milhous' age (85), his mental condition (he was declared incompetent and a guardian was appointed for him),[4] and the circumstances surrounding his association with Hunter (giving large sums of money and power of attorney to a person he had only met on a few occasions) lend additional support to the conclusion reached herein.

Judgment affirmed.

Buchanan, P.J. and White, J., concur.

NOTE.—Reported at 305 N.E.2d 448.

---

4.  Mental capacity to make a deed is closely equated with the mental capacity to make a will. Note, Mental Incompetence in Indiana: Standard and Types of Evidence, 34 *Ind. L.J.* 492 at 497-498 (1959). In will contests, evidence as to the testator's mental condition both prior and subsequent to the execution of the will is admissible. *Emry* v. *Beaver* (1922), 192 Ind. 471, 137 N.E. 55; *Griffith, Exr.* v. *Thrall* (1940), 109 Ind. App. 141, 29 N.E.2d 345; *Bell* v. *Bell* (1940), 108 Ind. App. 436, 29 N.E.2d 358. In the present case a guardian was appointed for Milhous after the deeds to the land had been executed. We view the guardianship appointment only as evidence to be considered by the trial court but not as conclusive proof of a lack of mental capacity. We do note that complete unsoundness of mind is not necessary to support a finding of fraud or undue influence. Weakness of mind when combined with other factors is sufficient. *Yount* v. *Yount* (1895), 144 Ind. 133 at 138-9, 43 N.E. 136.