**Mose SHRUM and Oleavy Shrum, Defendants-Appellants,**

v.

**Asa E. DALTON, d/b/a Dalton Real Estate, Plaintiff-Appellee.**

**No. 1–182A2.**

Court of Appeals of Indiana, First District.

Nov. 15, 1982.

Martha S. West, New Castle, for defendants-appellants.

G.K. Hodson, H. Terrill Harvey, Millikan, Hodson & Harvey, New Castle, for plaintiff-appellee.

RATLIFF, Presiding Judge.

## STATEMENT OF THE CASE

Defendant Mose Shrum appeals from the decision of the Henry Superior Court granting plaintiff Dalton a real estate commission on the sale of Shrum's farm. We reverse.

## FACTS

In April 1978 Mose and Oleavy Shrum[1] signed an exclusive listing agreement for the sale of their farm with Dalton Real Estate. The agreement was to be in effect for a six month period from April 4, 1978, to October 4, 1978. The listing agreement contained a commission clause giving Dalton five percent (5%) of the $85,000 listing price. An additional six (6) month period, running to April 4, 1979, was also included during which if the sellers sold to anyone with whom Dalton had put them in touch, Dalton would still collect his commission. On September 20, 1978, the Shrums accepted a written offer to purchase from Jay and Barbara Bramwell for $85,000. Large portions of the offer to purchase were not completed, apparently because the sale of the Shrum property was contingent upon the sale of two (2) properties owned by the

Bramwells in order to raise the necessary funds. While all parties agreed this was a condition of the offer, it was not so recorded on the offer itself. The offer to purchase only indicated that it was contingent upon the Bramwells' ability to procure a loan commitment. The Bramwells did receive a commitment of $25,500 from the Federal Land Bank on October 16, 1978. The commission clause in the offer to purchase was completed in the amount of $4,250, which is five percent (5%) of $85,000. The offer to purchase did not stipulate a time during which the offer was to remain open. The Bramwells were unable to raise the necessary funds prior to April 4, 1979. On May 26, 1979, Mose Shrum agreed to take a second mortgage. The Bramwells subsequently sold one property and borrowed an additional $10,000 from Jay Bramwell's mother. This combination of financing enabled the Shrums and Bramwells to close on June 26, 1979. Upon learning of the closing plaintiff Dalton brought suit for his commission. The trial court awarded the commission and defendant now appeals.

## ISSUES

Appellant presents two issues for review by this court. Since we reverse the decision of the trial court, we reach only the first of appellant's issues. Rephrased, the issue is as follows:

Does the Indiana Statute of Frauds prohibit the enforcement of a commission clause in an offer to purchase by the realtor where the contract between the parties is partly oral and partly written?

## DISCUSSION AND DECISION

The trial court erred in awarding Dalton his realtor's commission.

Appellant argues on appeal that the statute of frauds precludes the enforcement of the commission clause in the offer to purchase. In order to raise the statute

1. Oleavy Shrum died during the pendency of the trial court action leaving Mose as the sole defendant.

on appeal, the issue must first be raised at trial. *Clarkson v. Department of Insurance of the State of Indiana,* (1981) Ind.App., 425 N.E.2d 203, 206, *trans. denied; Zeigler Building Materials, Inc. v. Parkison,* (1980) Ind.App., 398 N.E.2d 1330, 1332. While appellant did not affirmatively raise the statute in a responsive pleading as required by the Indiana Rules of Civil Procedure, Trial Rule 8(C), it does appear from the record that the issue was tried by the implied consent of the parties. This is sufficient to preserve the issue for review by this court. *Lawshe v. Glen Park Lumber Co., Inc.,* (1978) 176 Ind.App. 344, 346–47, 375 N.E.2d 275, 277–78; *Hidden Valley Lake, Inc. v. Kersey,* (1976) 169 Ind.App. 339, 342–43, 348 N.E.2d 674, 677, *trans. denied.* With this issue properly before us, we proceed to the question of whether the court erred in awarding the broker's commission based upon the contracts executed by the parties.

■ Indiana's legislative enactment of the statute of frauds requires that any contract for the sale of land be in writing.[2] Similarly, our legislature has long recognized that any commission for the sale of land by a broker is unenforceable unless in writing and signed by the party against whom the commission is sought to be enforced.[3] These requirements inure to the benefit of both the broker and seller of real

property, because where a dispute arises as to either's performance, reference to the intent of the parties is readily available from the memorialization of the written contract. It is a general rule that the intention of parties to a contract is to be determined from the "four corners" of the document. *General Insurance Co. of America v. Hutchison,* (1968) 143 Ind.App. 250, 254–55, 239 N.E.2d 596, 599, *trans. denied.* Absent any ambiguity, this court will not construe the contract, *Indiana Industries, Inc. v. Wedge Products, Inc.,* (1982) Ind. App., 430 N.E.2d 419, 423, *trans. denied,* but rather will give effect to the plain language of the document. Thus, where the contract is complete on its face, it will be enforced absent such external influences as fraud, duress, or mistake.

■ In the instant case the offer to purchase entered into between the Shrums and Bramwells identified the buyers and sellers, the consideration to be exchanged, the receipt of earnest money, the buyers' receipt of a loan commitment as a condition precedent to the completion of the contract, and the broker's right to receive his commission.[4] While somewhat sketchy, the offer to purchase was an enforceable contract on its face. However, the plaintiff broker himself testified,[5] without objection, that

2. Indiana Code Section 32–2–1–1 (1976) states that
 "No action shall be brought in any of the following cases:
 ....
 Fourth. Upon any contract for the sale of lands.
 ....
 Unless the promise, contract or agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or by some person thereunto by him lawfully authorized, excepting however, leases not exceeding the term of three (3) years."

3. Indiana Code Section 32–2–2–1 (1976) states that
 "No contract for the payment of any sum of money or thing of value, as and for a commission or reward for the finding or procuring by one (1) person of a purchaser for the real estate of another, shall be valid unless the same shall be in writing, signed by

the owner of such real estate or his legally appointed and duly qualified representative: Provided, That any general reference to such real estate sufficient to identify the same shall be deemed to be a sufficient description thereof."

4. While a number of other items were not conclusively decided upon, they could have been logically inferred.

5. "Q. O.K. Was there an understanding that the Bramwells had to sell two pieces of property before they could complete this transaction?
 "A. Yes.
 "Q. Did you write down on this offer to purchase they had to sell?
 "A. No, I explained that to the Shrums when they got it, they had a rental property in Muncie that they wanted to sell, and uh, the home they were living in, they wanted to sell, that way they wouldn't have to borrow so much money on the farm.

while the written contract indicated the agreement was subject only to the Bramwells' ability to procure a loan, there was actually a second condition precedent to the performance of the contract which was not written on the face of the contract, but was acknowledged by all parties. That condition involved the ability of the Bramwells to sell two other properties in order to raise the additional funds necessary to purchase the Shrum farm. Once this evidence was admitted without objection, it is deemed to have been admitted for all purposes.[6] In the instant case, the broker himself testified that the complete offer to purchase was comprised of both written and parol terms. It is well settled that the inclusion of oral terms within a written contract is sufficient to render the entire contract oral. As our supreme court noted in *Ward v. Potts,* (1950) 228 Ind. 228, 91 N.E.2d 643, "[a] contract required by law to be in writing must be wholly so in order to be enforceable as a written contract. A contract partly in writing and partly in parol is a parol contract, and does not satisfy a statute requiring a written contract." *Id.* at 234, 91 N.E.2d at 645. As such, the offer to purchase, which admittedly contained parol terms, is a parol contract for purposes of the statute of frauds and the broker's commission statute and is, therefore, unenforceable by the broker in an action for payment of a commission. The trial court erred in awarding Dalton his realtor's commission based upon the commission clause in the unenforceable offer to purchase.

■ The initial contract between the broker and sellers is found in the listing agreement executed April 4, 1978. This was a complete contract as written, with no oral modifications. As such, it was enforceable pursuant to its terms. It provided for a commission if the broker found a purchaser "ready, willing *and able*" to buy the real estate.[7] Record at 52 (emphasis supplied). In addition, the agreement also provided for a six month extension period during which the consummation of a sale between the sellers and any party introduced to them by the broker would result in the broker's get-

"Q. Why did you not write that condition on this offer?
"A. Well, this, we all knew this, we all sat there and talked about it.
"Q. So you all agreed to this condition?
"A. Yes, yes. And the Shrums knew it, I explained it to them.
"Q. Do you usually write down on offers that they're subject to the buyer selling their home or other property?
"A. Now, that depends on the circumstances. In this we all sat there, and the Shrums agreed on it, the Bramwells if they had sold both their homes, they would only need twenty-five thousand, five hundred dollars ($25,500.00) on the house, which they did get that commitment from the Federal Land Bank for the twenty-five, five ($25,500.00).
"Q. They got a commitment on the loan from the Federal Land Bank?
"A. Uh huh.
"Q. So there were additional agreements that were not written on this offer, is that correct?
"A. Well, on the uh, to sell their homes, which they put them up for sale immediately.
"Q. At the time this offer was signed were the Bramwells able to purchase the property?
"A. No, they were going to sell their home, and buy it, they had enough equity in their home that they could have purchased the property with the sale of the (inaudible) property, which was, they had enough money plus the twenty-five, five ($25,500.00) which they got from the Federal Land Bank to buy their home.
"Q. So when they sold their two properties then they could buy the Shrum place?
"A. Yes."
Record at 92–94.

6. We note peripherally that the oral condition as a term of the contract was contemporaneous with the executed agreement. While this would tend to implicate parol evidence questions, no such questions were raised at trial. Therefore, we do not address the issue on its merits.

7. "In the event you find a purchaser ready, willing and able to buy said real estate, or should said real estate be sold by or through you, ourselves or otherwise, during said time for the price and upon the terms named on the reverse side of this contract, or for any other price or terms, or consideration acceptable to me or us. I or we hereby agree to pay you as commission a sum equal to 5% per cent of the sum for which said property is sold or exchanged; . . ."
Record at 52.

ting his commission.[8] However, as the record clearly indicates, the sale did not occur until well after the six month extension had expired. By its very terms the listing agreement indicated that it was to be unenforceable after April 4, 1979. In order to earn his broker's commission, Dalton needed to present a buyer ready, willing, *and able* to purchase the property prior to the termination of the listing agreement. This was not done. The Bramwells were unable to purchase the farm because their properties had not yet sold. The sale of the Shrums' farm was not able to be consummated until the Bramwells could arrange alternate financing after only one of their properties sold. This did not occur until some months after the extension period had run. Here, the broker, by his own terms in the listing agreement, indicated what he believed to be a reasonable time during which he should be able to sell the Shrums' farm and receive his commission. The sale did not occur within that time, nor was it possible until much later. Therefore, absent fraud on the part of the sellers and/or buyers, once the listing and extension periods had expired the broker had no recourse to enforce the contract.[9]

 While fraud was originally alleged by the broker, it was apparently not proved at trial, nor did the trial court rely upon fraud as a basis for entering its judgment. Rather, the court found that an enforceable contract was still in effect. The trial court made specific findings of fact on its own motion as per Indiana Rules of Civil Procedure, Trial Rule 52(A),[10] but made no general finding in favor of the plaintiff. In *Hunter v. Milhous,* (1973) 159 Ind.App. 105, 305 N.E.2d 448, the court set out the difference between general and special findings of fact.

"Findings of fact may be either general or special. A general finding is a finding in favor of one party and against the other. A special finding on the other hand contains all the facts necessary for recovery by the party in whose favor the conclusions of law are found and should contain a statement of the ultimate facts from which the trial court determines the legal rights of the parties to the action."

*Id.* at 121, 305 N.E.2d at 458 (citations omitted). When a general finding is made, the reviewing court will affirm the judgment of the trial court if it is sustainable upon any legal theory which is supported by the evidence. *Hunter,* 159 Ind.App. at 123, 305 N.E.2d at 459, *citing Indiana & Michigan Electric Co. v. Schnuck,* (1973) 260 Ind. 632, 634–35, 298 N.E.2d 436, 438–39. As *Hunter* noted, when the court makes specific findings on fewer than all the issues pursuant

---

8. "If said real estate is sold or exchanged within six months after the expiration of the term of this agreement to any person, firm or corporation with whom during the exclusive period of this listing you, your representatives or myself or ourselves had negotiations relative to the purchase of said property for said price stated herein or for a price and upon terms acceptable to me or us, I or we agree to pay you a commission equal to 5% per cent of the gross sale or exchange price thereof, provided, however, that his extension clause shall not be applicable and binding during the term said real estate is relisted with some other licensed Realtor under an exclusive listing contract upon or after the term of this listing agreement."
Record at 52.

9. That the broker also believed the contract to be unenforceable is borne out by the facts in this case. Immediately prior to the April 4,

1979, deadline, Dalton and the Bramwells came to Mose Shrum to ask for an extension of time in which to close. Shrum agreed to a few more days. In June 1979, Dalton also gave back the Bramwells earnest money, himself having been unable to sell the Bramwells' property. Plaintiff's actions are tantamount to an admission that he also believed the contract had ended with the end of the listing agreement extension.

10. Trial Rule 52(A) states, in part, that
 "In the case of issues tried upon the facts without a jury or with an advisory jury, the court shall determine the facts and judgment shall be entered thereon pursuant to Rule 58. Upon its own motion, or the written request of any party filed with the court prior to the admission of evidence, the court in all actions tried upon the facts without a jury or with an advisory jury . . . shall find the facts specially and state its conclusions thereon."

to Trial Rule 52(D),[11] the general finding or judgment is dispositive of all issues upon which the court has not expressly found. *Hunter,* 159 Ind.App. at 123, 305 N.E.2d at 459. However, in the instant case, the trial court made only specific findings of fact without entering a general finding. It is well settled that where special findings are made, this court may not affirm the judgment of the trial court on any ground which the evidence supports. Rather, we must determine whether the specific findings are adequate to support the decision of the trial court. Accordingly, we hold that where the trial court makes special findings *sua sponte* and makes no general finding, the special findings are controlling as to all issues. Since the trial court made no specific finding of fraud and entered no general finding, we cannot affirm the judgment based upon fraud.[12] As we stated previously, absent a showing of fraud, in this case, the plaintiff cannot recover. The trial court made no finding of fraud and thereby erred in awarding plaintiff his commission based upon a contract which was not enforceable after April 4, 1979.

Because the court erred in awarding the broker's commission based upon the offer to purchase, which was unenforceable under our statute of frauds, and because the listing agreement was also unenforceable, we reverse the decision of the trial court granting Dalton his broker's commission.

Reversed.

NEAL and ROBERTSON, JJ., concur.

11. "The court may make special findings of fact upon less than all the issues in a case when:
(1) special findings of fact are made but are not required under this rule; or
(2) findings are required because of the request of a party or parties who have demanded findings only upon such specified issues.
The court's failure to find upon a material issue upon which a finding of fact is required by this subdivision or this rule shall not be resolved by any presumption and may be challenged under subdivision (B) of this rule; but findings of fact with respect to issues upon which findings are not required shall be recognized as findings only upon the issues or matters covered thereby and the judgment or general finding, if any, shall control as to the other issues or matters which are not covered by such findings."

12. We note peripherally that Dalton himself was attempting to sell one of the Bramwells' properties for them. Given his knowledge of the oral condition concerning the offer to purchase and his attempts to sell such property, we fail to see how the buyers and sellers could have entered into a collusive agreement to defraud the realtor. We also note that Dalton dismissed the Bramwells as defendants.