**In re The Marriage of Merlen D. SESLAR, Appellant (Petitioner Below),**

**v.**

**Claudia J. SESLAR, Appellee (Respondent Below).**

**No. 02A04–8904–CV–133.**

Court of Appeals of Indiana, Fourth District.

April 11, 1991.

Daniel M. Graly, Anthony M. Stites, Barrett & McNagny, Fort Wayne, for appellant.

Stephen P. Rothberg, Fort Wayne, for appellee.

MILLER, Judge.

Merlen D. Seslar, respondent-appellant, appeals the trial court's property distribution in the dissolution of his marriage to Claudia J. Seslar, petitioner-appellee. He claims the trial court abused its discretion in dividing the marital property in an unequal manner without stating its reasons for deviating from an equal division as required by statute.

We reverse because Merlen requested special findings of fact and the findings of the court are inadequate to support the court's deviation from an equal division of property.

## DISCUSSION AND DECISION

Merlen and Claudia began living together in the spring of 1978 and married in December, 1984. On November 23, 1987, Merlen filed his Petition for Dissolution of Marriage and Claudia filed her Cross–Petition on December 1, 1987. On August 29, 1988, the trial court entered the Dissolution Decree.

The testimony at trial and the findings of the trial court reveal the following facts. The parties had no children together; however, Merlen has custody of a son from a previous marriage. The marital estate was not large and both parties presented evidence concerning assets, liabilities, earnings, and the financial situation of the parties as of the time the parties began living together and at the marriage date in 1984. The trial court's findings [1] included:

"6. That the parties commenced residing together in an nonmeritricious, cohabitative relationship in the spring of 1978 and resided together continuously in such circumstances until their marriage in December of 1984. That the facts and circumstances of their cohabitation is rel-

evant and material insofar as the Court's application of IC 31–1–11.5–11 is concerned in the final distribution of the marital estate.

"7. That at commencement of the cohabitative relationship, both parties had assets, liabilities, including tangible assets, that both parties were gainfully employed and that a general pattern was laid down whereby each would contribute to certain aspects of family maintenance and each would retain certain of their earnings for their own personal use and benefit. That the pattern of joint contribution to various other family necessities and acquisition of various items of marital property continued throughout the cohabitative relationship and through the marriage.

"8. That included in assets owned by Petitioner at commencement of the cohabitative relationship of the parties included: real estate recently purchased at 4031 West Wildwood Avenue, Fort Wayne, Indiana, household goods and furnishings, tools, collectibles, cash and liquid assets, and an automobile and motorcycle.

"9. That at commencement of the cohabitative relationship of the parties, Respondent owned certain personal property and that shortly after the relationship commenced Respondent received a settlement from a dissolution proceeding having to do with a prior marriage, in which she received substantial assets.

"11. That during the course of the marriage, the parties continued to accumulate marital wealth in the manner found herein, that by the pooling of a portion of the parties' income and resources for contribution toward joint marital obligations and acquisition of interest in real estate (7092 Bears Pass, Fort Wayne, Indiana) and other items of personalty.

---

1. Finding 10 generally described the assets and liabilities of each party at the time of the marriage without specifying any values for the items. Finding 14 generally described the assets of the marital estate at the date of separation with values assigned to all items except for a 1982 Honda Civic and a 1982 Toyota Truck. Finding 15 listed the liabilities and obligations of the marriage. Findings 18, 19, 20, 21, and 22 set out the distribution of the assets and liabilities.

"12. That during the course of the cohabitative relationship and marriage, both parties were employed; Petitioner in the advertising and graphic arts field, and Respondent as a school teacher.

"13. That during the course of the marriage, Respondent's earnings exceeded those of Petitioner.

"16. The Court finds, that of the marital obligations found to exist at separation, Petitioner should be responsible for the debt to Luther and Marie Seslar reflected in the Sheriff's execution and that Respondent should be obligated on the debts owed to Hudson's, L.S. Ayres, and the Professional Federal Credit Union.

"17. That giving appropriate weight to the factors enumerated in IC 31–1–11.-5–11 and consistently attaching appropriate weight to the fact of cohabitation by the parties under the circumstances found commencing in 1978, that equitable distribution of the assets and property of the parties would be as is set forth below:"

Merlen argues that the court erred in its distribution of the assets by failing to determine the total value of the marital estate and in awarding 75.7% of the assets and 85.1% of the net worth of the assets to Claudia without setting out reasons for its deviation from a 50/50 split.

Our statute (Ind.Code 31–1–11.5–11(c)) creates a presumption that an equal division of the marital property between the parties is just and reasonable. However, the presumption may be rebutted by a party who presents *relevant evidence,* including evidence of factors enumerated in the statute,[2] that such equal distribution *would not be just and reasonable.*

Our legislature passed this statute fully cognizant, as we should be, of the obvious fact that there is no marriage in which the parties' contributions are in all forms, income and otherwise, equal. However, the legislature mandated a presumption that an equal division of marital property is just and reasonable in order to move away from the old fashioned manner in which trial judges were permitted to divide marital property—they started anywhere and ended anywhere. See *Luedke v. Luedke* (1985), Ind., 487 N.E.2d 133.[3] Now, marriage is to be considered as a partnership—where profits are presumed to be shared

---

2. IC 31–1–11.5–11(c) reads as follows:

"The court shall presume that an equal division of the marital property between the parties is just and reasonable. However, this presumption may be rebutted by a party who presents *relevant evidence,* including evidence concerning the following factors, that an equal division would *not* be *just and reasonable:*
(1) The contribution of each spouse to the acquisition of the property, regardless of whether the contribution was income producing.
(2) The extent to which the property was acquired by each spouse prior to the marriage or through inheritance or gift.
(3) The economic circumstances of each spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell in that residence for such periods as the court may deem just to the spouse having custody of any children.
(4) The conduct of the parties during the marriage as related to the disposition or dissipation of their property.
(5) The earnings or earning ability of the parties as related to a final division of property and final determination of the property rights of the parties." (Emphasis added).

3. We would observe that shortly before the statute was amended to provide for a presumption that a 50/50 split is just and reasonable, our supreme court decided *Luedke, supra.* In that case, the husband in a twenty year marriage earned all of the money and the wife was the homemaker. The husband earned approximately $100,000 per year and the wife had to start anew. During the divorce she enrolled in a two-year program to become a respiratory therapist. Upon completion of her training, she could expect to earn an income of only $12,000 per year. The trial court awarded more of the marital estate to the husband (57%) than the wife (43%). While our supreme court affirmed the discretion of the trial court to make such a division, the court did state:

"Perhaps it could be said that in beginning to divide property pursuant to a dissolution of marriage, one's mind *ought* to lean toward an equal division until facts are brought forward to indicate otherwise;...." 487 N.E.2d at 134.
So, we do have an example, even before the statutory presumption was enacted by the legislature, where one party earned *all* of the money during the marriage and our supreme court felt a 50/50 split was a logical place to start.

Now we have a statute which creates a presumption that such a split is just and fair.

equally—even though one partner contributes more in income. This is justified by consideration of the other partner's less tangible—but equally valuable—contributions to the relationship and marriage.

■ Here, the trial court did not make an explicit finding of the total value of the estate. Our computation of the trial court's distribution of those assets which were valued indicates that Merlen received 44.2% of the assets and Claudia received 55.6%. Nowhere in the findings does the trial court explicitly state reasons for a deviation from a 50/50 split (or stated another way, reasons why such a split would be unjust or unreasonable). The trial court seems to address its responsibility in findings Nos. 6 and 17, which we repeat:

"6. That the parties commenced residing together in an nonmeritricious, cohabitative relationship in the spring of 1978 and resided together continuously in such circumstances until their marriage in December of 1984. That the facts and circumstances of their cohabitation is relevant and material insofar as the Court's application of IC 31–1–11.5–11 is concerned in the final distribution of the marital estate.

"17. That giving appropriate weight to the factors enumerated in IC 31–1–11.5–11 and consistently attaching appropriate weight to the fact of cohabitation by the parties under the circumstances found commencing in 1978, that equitable distribution of the assets and property of the parties would be as is set forth below:"

These findings are ambiguous and do not inform us why or how the fact of the couple's *cohabitation* before marriage affects the distribution of the property—or whether it can under our statute.

■ Furthermore, Merlen requested special findings of fact pursuant to Ind.Trial Rule 52. When a written request for special findings is filed with the court prior to the admission of evidence, the trial court is required to make complete special findings of fact. *Dahnke v. Dahnke* (1989), Ind.App., 535 N.E.2d 172. Special findings should contain all the facts necessary for recovery by the party in whose favor the conclusions of law are found and should contain a statement of the ultimate facts from which the trial court determines the legal rights of the parties to the action. *Hunter v. Milhous* (1973), 159 Ind.App. 105, 305 N.E.2d 448. When special findings are reviewed, the appellate court may not affirm the trial court's judgment on any ground (not mentioned in the findings) which the evidence supports, but must determine if the specific findings are adequate to support the trial court's decision. *Orkin Exterminating Company, Inc. v. Walters* (1984), Ind.App., 466 N.E.2d 55. Special findings provide the parties *and the reviewing court* with the theory on which the trial court decided the case so that the right of review may be effectively preserved. *Display Fixtures Co. v. R.L. Hatcher, Inc.* (1982), Ind.App., 438 N.E.2d 26.

Here, the trial court's findings are insufficient for our review. While the findings do set out the basic facts as to the sources of income, liabilities and various items of property, they do not reveal the basis for the court's distribution. They do not set out a total value for the marital estate and there are no express findings that justify a departure from an equal division of property based on unjustness or unreasonableness.

In *Kirkman v. Kirkman* (1990), Ind., 555 N.E.2d 1293, *where special findings were not requested,* our supreme court held that "express trial court findings will not be compelled for insubstantial deviations from precise mathematical equality." *Id.* at 1294. However, *Kirkman* does not indicate what magnitude of disparity will trigger the specific finding requirement.

Therefore, we reverse and remand to the trial court with instructions to enter special findings, as requested, determining the total value of the marital estate[4] and explain-

---

4. As noted earlier, the trial court did not state a total value for the estate. Merlen claims that the trial court did not assign a value to the items of personalty in each party's possession, and did not include in the decree an additional amount of personal property (which he values at

ing—if the division is unequal—why an equal division of property would not be just and reasonable.

SHIELDS, J., concurs.

CHEZEM, J., dissents with opinion.

CHEZEM, Judge, dissenting.

I respectfully dissent. I cannot agree with the majority's conclusion that the trial court's order was insufficient to explain its deviation from a 50/50 split. The trial court explicitly stated that the parties' extensive cohabitation prior to their marriage was a primary factor in its property division.

The majority, by deciding that the trial court's findings are ambiguous, has simply reweighed the evidence. The trial court, when making special findings pursuant to a request under Trial Rule 52, is not required to express its decision with meticulous exactitude, as the majority seems to desire. The trial court's findings are sufficient if they demonstrate a valid legal basis for the result reached by the trial court. *Data Processing Services, Inc. v. L.H. Smith Oil Corp.* (1986), Ind.App., 493 N.E.2d 1272; *Morphew v. Morphew* (1981), Ind. App., 419 N.E.2d 770. The trial court is not required to weigh every piece of evidence and explain its reasoning in minute detail.

The trial court could reasonably conclude that the parties' extensive cohabitation before their marriage, during which Claudia received substantial assets, entitled Claudia

$1,342.00). On remand, the parties are free to

to a *slightly* larger share of the marital estate. While those facts *could* support a different conclusion, our focus is on what the trial court *did,* not on what it could have done. *See Beeson v. Beeson* (1989), Ind.App., 538 N.E.2d 293. It is not for us to substitute our judgment for that of the trial court. The trial court articulated a valid legal basis for its decision. The decision was neither arbitrary nor capricious, and its findings were not clearly erroneous.

The majority also concludes that the trial court was required to make an explicit finding of the total value of the estate. This court in *Dean v. Dean* (1982), Ind.App., 439 N.E.2d 1378, observed that the trial court is not required to value each marital asset so long as it can determine the approximate gross value of the marital estate. The only property not valued in the decree was the parties' vehicles. Because each party received one vehicle, we cannot conclude the trial court was unable to determine the approximate gross value of its distribution to the parties. While a total value of the marital estate would have aided our review, we will not hold the trial court abused its discretion because it failed to provide the value of the gross marital estate.

The trial court should be affirmed.

stipulate to a fair value for such property.